Marshall, Ch. J.,
 

 after stating the facts of the case, delivered the opinion of the court, as follows : — It is contended, on the part of the purchaser, 1st. That the lands are exonerated from the mortgage by the confiscation and sale thereof made by the state of Georgia. 2d. That they are exonerated by the length of time which has intervened since that confiscation and sale, during which an adverse possession has been held. 3d. That payment of the mortgage is to be presumed.
 

 Several acts of confiscation were passed, during the war, by the state of Georgia, in which the name of Alexander Wylly is to be found. That under which the defendants in this case claim, was made in the month of May, in the year 1V82. That act contains also a clause confiscating generally the estates of British subjects, with the exception of debts due to merchants residing in Great Britain, which were sequestered. The debt due to Greenwood
 
 &
 
 Higginson came within this exception, and the majority of the court is of opinion, that the lien given by the mortgage on the land of Wylly, for the security of that debt, was not confiscated.
 

 The estate of Wylly, not the interest of Greenwood & Higginson in that estate, being confiscated, it is not to be inferred, that the lien of Greenwood
 
 &
 
 Higginson on that estate was discharged. The treaty of peace *was made, while the estate remained unsold. The fifth article of the *- treaty, after discovering much solicitude on the part of Great Britain for the entire restoration of confiscated estates, concludes with this clause : “ And it is agreed, that all persons who have any interest in confiscated lands, either by debts, marriage-settlements, or otherwise, shall meet with no lawful impediment in the prosecution of their just rights.”
 

 This article applies to those cases where an actual confiscation has taken place, and stipulates expressly, that in such cases, the interest of all persons having a lien upon such lands shall be preserved. Neither the confiscation, nor any act in consequence of the confiscation, can constitute a legal impediment to the prosecution of their just rights. The preceding part of the article had contemplated sales of the confiscated property, and consequently, this clause must have been intended to charge the lands, even in the hands of a purchaser. But respecting its application to this particular case, the court cannot conceive a doubt. The lands, at the time of the treaty, remained unsold, and the government claiming them as confiscated, stipulates through the proper constituted authorities, for their liability to this mortgage. If, then, the act of confiscation, independent of the treaty, would be
 
 *250
 
 construed to destroy the claim of the mortgagee, the treaty reinstates the lien in its full force, and the subsequent sale of the property could only pass it with the burden imposed upon it.
 

 2. Is this remedy barred by the act of limitations ? Upon an attentive consideration of that act, it appears to be intended for suits at law, claiming the lands themselves, not to suits in equity for the purpose of subjecting the lands to the payment of debts for which they are mortgaged. The words of the law would lead to that opinion, and it is confirmed by the consideration that, in such cases, the possession of the mortgagor, or those claiming under him, is not adverse to, but is compatible with, the rights of the mortgagee. Unless, therefore, this statute has been otherwise construed ^ *in Georgia, it would not be considered as applicable to such a case J as this. But this point must be decided in favor of the plaintiffs because there is a saving in the act of the rights of persons beyond sea.
 

 S. Is payment in this case to be presumed ? The length of time which elapsed between the day when this bond and mortgage became payable, and that on which the suit was instituted, is certainly sufficient to warrant a presumption of payment. But this presumption may be met by circumstances which account for the delay in bringing this suit. In this ease, the war, and those events which succeeded the war, have not the same influence as in ordinary cases of British debts, because the debtor was within the reach of his creditor from the date of his banishment, in the year
 
 1118,
 
 and might have been sued. It does not sufficiently appear in the proceedings, where he was, nor what was his situation, to enable the court to judge whether the long delay in bringing this suit is, or is not, sufficiently accounted for. Neither is it shown satisfactorily, that Alexander Wylly has left no personal representative, who might show payment of this debt. If there be a personal representative of Alexander Wylly in existence, such person ought to be a party to this suit; if there be no personal representative, some evidence that there is none, ought to be adduced. In any event, under all the circumstances of this case, enough does not appear to enable the court to decide whether payment ought to be presumed, or whether the delay in instituting this suit can be accounted for, and the court is, therefore, of opinion, that an issue ought to have been directed by the circuit court, for the purpose of ascertaining the fact of payment.
 

 The decree of the circuit court is, therefore, to be reversed, and the cause remanded to that court, with instructions to direct an issue to determine whether the bond in the bill mentioned has been paid, and with liberty to the plaintiff to amend his bill and make new parties, if he shall desire it.
 

 Livingston, J., dissented from this opinion, but did not state his reasons.
 

 Decree reversed.