12 U.S. 98
 8 Cranch 98
 3 L.Ed. 500
 BEATTY'S ADMINISTRATORS
v.
BURNES'S ADMINISTRATORS
 Mar. 1, 1814
 
 Absent. WASHINGTON, J.
 ERROR to the Circuit Court for the district of Columbia,
 sitting at Washington.
 The case as stated by STORY, J. in delivering the opinion of the Court, was as follows:
 
 
 1
 This is an action for money had and received brought by the Plaintiffs as administrators of Charles Beatty, deceased, against the Defendant as administrator of David Burnes, deceased. The declaration alledges the promise to have been made in the life time of the respective intestates. The Defendant has pleaded the general issue, and the statute of limitations of Maryland.
 
 
 2
 Upon the trial in the Circuit Court for the district of Columbia, the Plaintiffs sought to support their action under the 5th section of the statute of Maryland, of Nov. 1791, ch. 45, concerning the territory of Columbia, and the city of Washington, that section is as follows:
 
 
 3
 'And be it enacted, That all the squares, lots, pieces and parcels of land within the said city, which have been or shall be appropriated for the use of the United States, and also the streets, shall remain, and be for the use of the United States; and all the lots and parcels which have been or shall be sold to raise money as a donation as aforesaid, shall remain and be to the purchasers according to the terms and conditions of their respective purchases.'
 
 
 4
 'And purchases and leases from private persons claiming to be proprietors and having, or those under whom they claim having, been in possession of the lands purchased or leased, in their own right, five whole years next before the passing of this act, shall be good and effectual for the estate, and on the terms and conditions of such purchases and leases respectively, without impeachment, and against any contrary title now existing; but if any person hath made a conveyance, or shall make a conveyance or lease, of any lands within the limits of the said city, not having right and title to do so, the person, who might be entitled to recover the land under a contrary title now existing, may, either by way of ejectment against the tenant, or in an action for money had and received for his use against the bargainor or lessor, his heirs, executors, administrators or devisees, as the case may require, recover all money received by him for the squares, pieces or parcels appropriated for the use of the United States, as well as for lots or parcels sold, and rents received by the person not having title as aforesaid, with interest from the time of the receipt; and on such recovery in ejectment where the land is in lease, the tenant shall thereafter hold under, and pay the rent reserved, to the person making title to and recovering the land, but the possession, bona fide acquired, in none of the said cases shall be changed.'
 
 
 5
 The Plaintiffs offered evidence, that on the 16th of April, 1792, Charles Beatty, the intestate returned into the land office for the Western Shore of Maryland, a certificate of survey dated on the 3d of April, 1792, and then paid the usual caution money for the land described in said certificate. On the 23d May, 1792, a caveat against the issuing of a patent for the lands on said certificate, was filed by David Burnes the intestate, which caveat was discontinued on the 23d of May, 1801, by virtue of a certain act of the state of Maryland. On the same day a patent issued from the land office to Charles Beatty for the land described in said certificate, which land is within the limits of the city of Washington, and was taken up by Beatty as a vacancy; but Beatty never had actual possession thereof, nor ever claimed to make division thereof with the city commissioners as an original proprietor pursuant to the statute of Maryland, 1791, ch. 45. In fact the same land had been held and claimed by David Burnes in his own right, for more than five years before the passing of the statute aforesaid, as included in the lines of a grant made as early as 1720. The Plaintiff offered evidence however that the land included in Beatty's patent, was without the lines of the land to which Burnes was, under his grant, really entitled, and that it was vacant land of the state of Maryland. The warrant, under which Beatty's patent was obtained, was, (before the location within the limits of Washington,) in part located upon and applied to other lands of the state of Maryland, not within the said city, or the county in which it was situate while belonging to Maryland. Burnes in his life time, and before the statute of 1791, ch. 45, made a conveyance of the land in controversy as an original proprietor to certain trustees for the purposes named in that statute, and received of the city commissioners on account of parts of the same land appropriated to city purposes, the sum of $7,343 82, in various sums paid between October, 1792 and June, 1796; and also received $1,000 on account of other parts of said land which he sold and conveyed to individuals. Burnes died in May, 1799, and administration of his estate was granted in Prince George's county, in the same year to his widow, who died in January, 1807. In April, 1803, administration of his estate was granted to the Defendant, by the Orphan's Court of Washington county, in the district of Columbia. Beatty died sometime before May, 1805, and in that month administration of his estate was granted to the Plaintiffs. The present action is brought to recover the money so received by Burnes, upon the ground that it was the proceeds of the sale and disposition of land included in Beatty's patent. No demand or claim was ever made by Beatty on Burnes or his administrators, in his life time, for the same money, although both parties from the year 1791, until their respective deaths lived within the limits of the district of Columbia and within two miles of each other—nor did the Plaintiffs ever make any demand or claim upon the Defendant until February, 1810. Under these circumstances the Court below were of opinion that the Plaintiffs could not sustain the action, and upon that direction the jury found a verdict for the Defendant.
 
 
 6
 F. S. KEY, for the Plaintiffs in error.
 
 
 7
 Two questions arise in this case.
 
 
 8
 1st. Whether the Plaintiffs have a good cause of action under the patent to Beatty, if not barred by the statute of limitations: and
 
 
 9
 2d. Whether the statute of limitations is a bar to the action.
 
 
 10
 1. As to the title of Beatty. The caveat by Burnes was pending when Congress assumed the jurisdiction over the district of Columbia, which was on the 27th of February, 1801. The patent did not issue until the 23d May, 1801, but according to the law of Maryland, adopted as the law of that part of the district of Columbia in which the land lies, the title has relation to the return of the certificate of survey and payment of the purchase money to the state, if the original warrant of survey was general—but if it was a special warrant, the title relates to the date of the warrant. That is to say, in either case the title relates to that act of the party which appropriates and locates a particular tract of land under a warrant of survey. Beatty had two warrants. The first was a special warrant for 80 acres, and was dated the 22d of April, 1971, before the statute of Maryland of 1791, which ceded the territory of Columbia to the United States. The other warrant was for 6 arces, and was dated the 26th of March, 1792. A special warrant contains the name of the county in which it is to be executed, and also such a location, or description of the land intended to be surveyed, as the party directs. It binds and secures the land, therein described, from the operation of other warrants, but it may be located any where else. A common warrant is for the number of acres required, 'not formerly surveyed for, nor cultivated by any person,' and is directed to any surveyor legally required. Kilty's Landholder's Assistant, 468.
 
 
 11
 Beatty's title relates (if not to the date of the first warrant) to the date of the return of the certificate of survey, and payment of the purchase money which was on the 16th of April, 1792.
 
 
 12
 Nothing but the form of a grant was necessary to complete the title before congress assumed the jurisdiction.
 
 
 13
 But it is contended, that the state of Maryland, by the 2d section of the act of Nov. 1791, ch. 45, ceded to the United States the land in question. That section is as follows: 'Be it enacted,' &c. 'that all that part of the said territory, called Columbia, which lies within the limits of this state, shall be, and the same is hereby acknowledged to be, forever ceded and relinquished to the congress and government of the United States, in full and absolute right and exclusive jurisdiction, as well of soil, as of persons residing, or to reside, thereon, pursuant to the tenor and effect of the eight section of the first article of the constitution of government of the United States; provided that nothing herein contained shall be so construed to vest in the United States any right of property in the soil, as to affect the rights of individuals therein, otherwise than the same shall or may be transferred by such individuals to the United States; and provided also that the jurisdiction of the laws of this state, over the persons and property of individuals residing within the limits of the cession aforesaid, shall not cease or determine until congress shall by law provide for the government thereof, under their jurisdiction, in manner provided by the article of the constitution before recited.'
 
 
 14
 This section did not transfer to the United States the vacant lands in the district of Columbia.
 
 
 15
 The 8th section of the 1st article of the constitution of the United States only gave congress power 'to exercise exclusive legislation over such district (not exceeding 10 miles square) as may, by cession of particular states, and the acceptance of congress, become the seat of the government of the United States.' It did not authorize congress to accept the right of soil. The act of Maryland does not use words of conveyance of soil. They purport only a cession of jurisdiction. 'Ceded and relinquished' are not words of grant. If they conveyed the soil they conveyed the persons also, for the same words are applied to them as to the soil. The legislature of Maryland were not competent to convey the soil, and it is doubtful whether they could transfer the jurisdiction. A title to vacant lands in this part of the district could only be attained by the regular proceedings in the land office of Maryland.
 
 
 16
 2. As to the statute of limitations.
 
 
 17
 The action of assumpsit given by the 5th section of the act of Nov. 1791, c. 45, is not to be considered as within the clause of the statute of limitations applicable to assumpsits. It purports to be a substitute for an action of ejectment, which is limited to 20, not to 3 years. It is evident that the object of the legislature was merely to protect the possession, not to take away the right. It is therefore natural to suppose that they intended that every person who could maintain ejectment should be entitled to maintain this action of assumpsit which was given in lieu of it, and only given that the judgment might affect the vendor and not the vendee; and that the Plaintiff should recover the price and not the land itself. The statute applied to conveyances and sales then already made as well as to conveyances and sales thereafter to be made. Suppose a sale made more than three years before the statute. The legislature did not surely intend to give a barred remedy in the place of an effective one. An action of debt given by statute for an escape is not barred by the statute of limitations.
 
 
 18
 But this is a case of trust, and trusts are not within the statute of limitations. Burnes received the money for the use of Beatty. In a case of trust, the statute does not begin to run till a demand is made. On this point there is a case of money received by an attorney for his client; and another of fees received for a judge by his clerk. We could not prevent Burnes from receiving the money. The law, therefore, makes him our trustee.
 
 
 19
 JONES, contra.
 
 
 20
 It is said that the legislature of Maryland was not competent to convey the soil, and that congress had no power to accept it.
 
 
 21
 Exclusive legislation comprehends all the rights over the territory and inhabitants which the state of Maryland had. If, therefore, the authority rested upon those words alone, the right to accept a cession of the soil would be implied. The constitution of the United States requires a cession of territory before congress could exercise exclusive legislation. The constitution of Maryland does not limit the mode in which the state shall grant its vacant lands. It is competent to do it by a legislative act as well as by the intervention of the land office. But the constitution of the United States is paramount to the constitution of Maryland as to the cession of the district of ten miles square. It authorizes particular states to cede as well as Congress to accept.
 
 
 22
 The 2d section of the act of Maryland, 1791, c. 45, has sufficient words to pass the right of soil as well as of jurisdiction. It declares 'that all that part of the territory, called Columbia, which lies within the limits of this state shall be, and the same is hereby acknowledged to be, forever ceded and relinquished to the congress and government of the United States, in full and absolute right' 'of soil,' and 'full and absolute' 'exclusive jurisdiction' ' of persons residing,' &c. with a proviso that the right of soil should not so vest in the United States as to affect the rights of individuals therein. This implies an intention that the right of soil should vest in the United States wherever the rights of individuals should not be affected thereby. It is not only clear, therefore, that the state was competent to convey, and has used sufficient words of conveyance; but it is equally clear that it was its intention to convey, and that it has conveyed to the United States all its lands which were vacant at the date of the act, (19th December, 1791.) It follows, therefore, that on the 3d of April, 1792, the date of the survey, the state of Maryland had no vacant lands in the district of Columbia, liable to be surveyed under the warrant.
 
 
 23
 The act of 1791 gives the action only to a person whose title then existed, (19th Dec. 1791.) Beatty's title relates back no farther than the 16th of April, 1792, the date of the return of the certificate of survey, and the payment of the money to the state.
 
 
 24
 2. As to the statute of limitations. We admit that when a statute gives an entire new cause of action, it may not be barred by the act of limitations. But this statute only gives a new form of remedy upon an old cause of action. The declaration does not purport to be founded on the statute. It contains only a general count for money had and received to the Plaintiff's use.
 
 
 25
 As to a trust not being within the act of limitations, the cases on that point are all in equity. But here there was no trust. The parties were adverse Claimants.
 
 
 26
 F. S. KEY, in reply.
 
 
 27
 1. The state of Maryland had sovereign rights, and private rights. She meant to grant only her sovereign rights. She presumed that all the soil had been granted to individual, and that there was no vacant land in the district. The terms she used are appropriate to a transfer of jurisdiction only.
 
 
 28
 The 3d section of the act of 1791 is conclusive that she did not mean to convey her private rights. By that section the lots in Carrollsburgh and Hamburgh, (small villages included within the lines of the city of Washington) which were the property of the state, were subjected to the same terms of trust as the other lots in the city. That is to say, one half thereof was to be reconveyed to the state, and the other half to be sold for the use of the public.
 
 
 29
 The constitution of Maryland speaks of the land office, and thereby continues all the rules and laws of that office. No lands could pass from the state but through the forms of the land office.
 
 
 30
 Beatty's title relates back at least as far as the 16th of April, 1792. But the special warrant was prior to the act of 1791, and the proviso of that statute saves all the rights of individuals, so that if Beatty had a right to locate his warrant in the city before the date of the act, that act did not deprive him of that right. He had a contrary title then existing. But if he had not, the statute had, and he claims as her assignee.
 
 
 31
 The statute did not mean to exclude the heirs and assigns of those who then had title from the benefit of the remedy provided.
 
 
 32
 2. As to the statute of limitations. Burnes received the money as trustee. When he received it he knew of Beatty's claim. 1 Saund. 37, 383. 4 Bac. Ab. 472.
 
 
 33
 PINKNEY, as amicus curice,
 
 
 34
 Stated that he had never heard of the relation of title being carried farther back than to the certificate of survey; even on a special warrant: for, although special, it may be located any where.
 
 
 35
 March 1st. Absent. JOHNSON, J. and LIVINGSTON, J.
 
 
 36
 STORY, J. after stating the case, delivered the opinion of the Court as follows:
 
 
 37
 It is contended by the Plaintiffs in error that the direction of the Circuit Court was erroneous, 1. Because the Plaintiffs' intestate had a good and valid title to the land surveyed under his patent, and was, therefore, entitled under the 5th section of the Maryland statute of 1791, to the money received by the Defendant's intestate therefor. 2. That this right was not barred by the statute of limitations.
 
 
 38
 In support of the first point the Plaintiffs contend that the land belonging to the state did not, by the cession of the territorial jurisdiction under the statute of 1791, pass to the United States, and was consequently liable to be appropriated by individuals under warrants pursuant to the laws of Maryland. That until 1801 the jurisdiction of Maryland continued over the whole ceded territory; and titles, therefore, might legally be acquired therein according to the public laws: and the patent of Beatty, being obtained in pursuance of those laws, gave him a complete and valid title.
 
 
 39
 On the other hand the Defendant denies each of these positions, and further contends, that the Plaintiffs are without the purview of the 5th section of the act of 1791, because that section extends only to titles then existing, and Beatty's title did not commence until April, 1792.
 
 
 40
 It is not necessary to consider the correctness of the positions urged by the respective parties as to this point, because we are of opinion that the case may well be decided upon the second point.
 
 
 41
 The action for money had and received is clearly embraced by the statute of limitations; and it is incumbent upon the Plaintiffs to show that the present case forms an exception to its operation.
 
 
 42
 It is contended that the present suit, being a statute remedy, is not within the purview of the statute of limitations, But we know of no difference in this particular between a common law and statute right. Each must be pursued according to the general rule of law, unless a different rule be prescribed by statute; and where the remedy is limited to a particular form of action, all the general incidents of that action must attach upon it. Upon any other construction it would follow that the case would be without any limitation at all; for it would be quite impossible, upon any acknowledged principles, when a right had assumed the shape of a claim in personam, to attach to it a limitation which exclusively applied to the reality. Now the statute of limitations has been emphatically declared a statute of repose, and we should not feel at liberty to break in upon its general construction by allowing an exception which has not acquired the complete sanction of authority.
 
 
 43
 It is further contended, that by the operation of the act of 1791, ch. 45, Burnes must be considered as a mere trustee of Beatty, and trusts are not within the statute of limitations. We are of a different opinion. The land in controversy was claimed by Burnes in his own right, and adversely to the Plaintiffs' intestate. The money was received by him for his own use and in his own right as an original proprietor. He never admitted or acknowledged the title of the Plaintiff, and no claim or demand was ever made upon him in his life time. So far then from being received in trust, it was expressly received under a peremptory denial of any trust or right in the opposite party. Nor was the statute meant to make the adverse possessor without title a trustee for the party having title. It only substituted the action of assumpsit for the ordinary legal remedy by ejectment; and the adverse possessor of the land could no more be deemed a trustee of the money, than he could be deemed a trustee of the land itself, for the benefit of the rightful owner, against whom he held by an adverse title.
 
 
 44
 The Court are, therefore, of opinion that the statute of limitations is a good bar, and, therefore, that the judgment must be affirmed.