# MICHIGAN INSURANCE BANK *v.* ELDRED.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

No. 239. Argued April 5, 8, 1889. — Decided May 13, 1889.

Even before the act of June 1, 1872, c. 255, a provision, in a state statute of limitations of personal actions, that a service of the summons, or its delivery to an officer with intent that it should be served, should be deemed a commencement of the action or equivalent thereto, was applicable, like the rest of the statute, to an action in the Circuit Court of the United States.

A provision in a statute of limitations, that a delivery of the summons to an officer, with the intent that it shall be actually served, shall be deemed equivalent to the commencement of the action, is satisfied if the summons made out by the clerk, pursuant to the attorney's direction, is placed by the clerk in a box in his office, designated by the officer, with the clerk's assent, as a place where processes to be served by him may be deposited and from which he usually takes them daily.

THIS was an action by a Michigan corporation against a citizen of Wisconsin upon a judgment recovered by the plaintiff against the defendant on May 13, 1862, in the Circuit Court for the county of Wayne and State of Michigan, for the sum of $4211.56, which the plaintiff now sued for, with interest. The defendant answered that the cause of action did not accrue within ten years.

At the trial, the plaintiff offered in evidence the *præcipe,* dated May 11, 1872, signed by its attorney, and directing the

clerk to issue a summons in this case, returnable according to law; and the summons issued by the clerk, bearing the same date, and returnable on the first Monday (which was the third day) of June, 1872; with the return of the marshal thereon, stating that he had served it on June 3, 1872.

The plaintiff's attorney testified that he prepared the *præcipe* on the day it bore date, and, when he had filled it up, filed it with the clerk, and then went immediately to the marshal's office, which was one story above the clerk's office in the same building, and told the marshal that there was in the clerk's office a summons in this case for service.

The clerk, who had been in office for more than five years before that day, being called as a witness, and asked as to the practice or habit of the marshal in respect to calling at the clerk's office for process, and as to the usual practice in the clerk's office as to making out and delivering a summons, testified as follows: "The marshal usually stopped at our office, on his way up and down stairs, and got such writs as were waiting for him. We had a box in which we usually placed them, so that he could stop in, open the door, and get them and take them up. The box stood on a bookcase near the door. That had been the custom for years; ever since I had been in the office." "Sometimes attorneys would wait until the process was issued, and take it and deliver it to the marshal; sometimes we would put it in his box, and the marshal would get it there." "I presume the summons must have been made out by me on May 11, 1872; I know of nothing to the contrary. The mark of filing on the *præcipe* for a summons is in my handwriting; it was filed May 11, 1872. I have no special recollection about that particular summons." "Our practice was to put writs in that box for the marshal. It was our practice to put them there the day when the writ was issued."

On cross-examination, he testified that he sometimes delivered processes to the attorney in the case to take to the marshal, and sometimes, if the marshal did not come down immediately, would take them up to him.

On reëxamination, he testified that the custom was to issue

the summons on the same day the *præcipe* was filed, and that he had no recollection of ever having neglected to do so.

The plaintiff requested the court to instruct the jury that "the delivery of the process to the marshal for serving may be inferred from the practice and course of business as to delivery of the summons by the clerk, or the practice of the marshal to receive the same in the office of the clerk."

The court declined to give this instruction, and directed a verdict for the defendant, which was returned. The plaintiff duly tendered a bill of exceptions and sued out this writ of error.

*Mr. George P. Miller* for plaintiff in error.

*Mr. Alfred L. Cary* (with whom was *Mr. F. C. Winkler* on the brief) for defendant in error.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The cause of action accrued May 13, 1862, when the judgment sued on was recovered; and the case turns upon the question whether the action was commenced within ten years afterwards.

As the facts relied on by the plaintiff to prevent the bar of the statute of limitations occurred in May, 1872, the question is not affected by the act of Congress of June 1, 1872, c. 255, § 5, requiring the practice, pleadings, and forms and modes of proceeding, in actions at law in the Circuit and District Courts of the United States, to conform, as near as may be, to those of the courts of record of the State. 17 Stat. 197; Rev. Stat. § 914.

Before the act of 1872, the form of mesne process and the forms and modes of proceeding in actions at law in the courts of the United States in Wisconsin were such as were used in the highest court of original jurisdiction of the State at the time of its admission into the Union in 1848. Acts of May 19, 1828, c. 68, 4 Stat. 278; August 6, 1846, c. 89, § 4, and

May 29, 1848, c. 50, 9 Stat. 57, 233; *United States* v. *Keokuk Council*, 6 Wall. 514.

But it had been settled by a series of decisions of this court that statutes of limitations, even in personal actions, including actions on judgments, were "laws of the several States" which, except where the constitution, treaties or statutes of the United States otherwise required or provided, must, under the Judiciary Act of September 24, 1789, c. 20, § 34, "be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply." 1 Stat. 92; Rev. Stat. § 721; *Beatty* v. *Burnes*, 8 Cranch, 98; *McCluny* v. *Silliman*, 3 Pet. 270; *Alabama Bank* v. *Dalton*, 9 How. 522; *Bacon* v. *Howard*, 20 How. 22; *Amy* v. *Dubuque*, 98 U. S. 470. Statutes of limitation of personal actions are laws affecting remedies only, and not rights, as is clearly shown by the decisions that the only statutes of limitations applicable to such an action are the statutes of the State where the action is brought, and not those of the State where the cause of action arose. *McElmoyle* v. *Cohen*, 13 Pet. 312, *Townsend* v. *Jemison*, 9 How. 407; *Walsh* v. *Mayer*, 111 U. S. 31. It was thus established that statutes of limitations of the State governed personal actions in the courts of the United States. Otherwise, in the absence of Congressional legislation, there would be no limitation of the time of bringing any personal action in a court of the United States.

The statute of Wisconsin upon this subject, in force in May, 1872, was chapter 138 of the Revised Statutes of 1858, entitled "Of the Limitation of Actions," the material provisions of which are as follows:

"SEC. 1. Civil actions can only be commenced within the periods prescribed in this chapter, except when in special cases a different limitation is prescribed by statute."

"SEC. 14. The periods prescribed in section one of this chapter for the commencement of actions, other than for the recovery of real property, shall be as follows:"

"SEC. 16. Within ten years: 1. An action upon a judgment or decree of any court of record of any state or territory within the United States, or of any court of the United States."

"SEC. 27. An action shall be deemed commenced as to each defendant, when the summons is served on him, or on a codefendant who is a joint contractor or otherwise united in interest with him.  An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this chapter, where the summons is delivered, with the intent that it shall be actually served, to the sheriff or other proper officer of the county in which the defendants, or one of them, usually or last resided." "But such an attempt must be followed by the first publication of the summons, or the service thereof, within sixty days."

The first sentence of the last section, declaring that the service of the summons shall be deemed the commencement of the action, is embodied in the statute of limitations, and is as clearly a part of it as the second sentence of the section, declaring that an attempt to commence an action by delivery of the summons to an officer with intent that it shall be actually served shall be deemed equivalent to a commencement thereof. The words "within the meaning of this chapter" were fitly inserted in the second sentence, in order to make clear the intent of the legislature that this sentence laid down a rule applicable only to the limitation of actions; and were naturally omitted in the first sentence, because the rule therein laid down accorded with similar provisions in a previous chapter, entitled "Of the Manner of Commencing Civil Actions," c. 124, §§ 1, 11.

The legal construction and effect of § 27 of c. 138, taken in connection with the preceding sections of the same chapter, is that the service of the summons, or its delivery to an officer with intent that it shall be served, is the act by which the period of limitation must be computed; and the definition of that act is an integral part of the statute of limitations, and as such applicable, as the rest of the statute undoubtedly is, to actions in the courts of the United States.

But in order to come within the second sentence of that section, requiring the summons to be "delivered, with the intent that it shall be actually served, to the sheriff or other proper officer," it does not appear to us to be necessary that

there should be a manual delivery of the summons to the officer in person. It would be sufficient, for instance, if the attorney left it on the marshal's desk or other place in the marshal's office, so that the marshal would understand that it was left with him for service. It would be equally sufficient if the attorney, or the clerk acting by his direction, placed the summons in a box in the clerk's office, designated by the marshal, with the clerk's assent, as a place where processes to be served by him should be deposited, and from which he usually took them daily.

The defendant much relies on an opinion of the Supreme Court of Wisconsin, in which it was said that "the fact that the summons was not placed in the hands of an officer of the county in which the action was intended to be commenced would be fatal to the claim that there was an attempt to commence the action within the meaning of § 4240" of the Revised Statutes of 1878, corresponding to § 27 of c. 138 of the Revised Statutes of 1858. *Sherry* v. *Gilmore*, 58 Wisconsin, 324, 334. But in that case there was no service, or attempt to serve, except through the mail; and the court had not before it the question whether depositing a process in a place provided and designated by the officer was equivalent to putting it in his own hands.

In the case at bar, the testimony introduced by the plaintiff tended to show that the attorney filled out the *præcipe* to the clerk to issue the summons and filed the *præcipe* with the clerk on May 11, 1872, and immediately went to the marshal's office, one story above, in the same building, and told him there was in the clerk's office a summons in this case for service. The summons issued by the clerk bore date of the same day. The clerk testified that he presumed that the summons must have been made out on the day of its date, and knew nothing to the contrary; that his custom was to issue the summons on the same day the *præcipe* was filed, and he had no recollection of ever having neglected to do so; but had no personal recollection about this particular summons. He also testified that there was a box on a bookcase near the door in his office, where he usually placed such writs as were

waiting for the marshal, so that he could stop in, open the door, and get them and take them up, and he usually stopped on his way up and down stairs and got such writs; and that the practice of the clerk's office was to put writs in that box for the marshal on the day on which they were issued, but the clerk sometimes delivered processes to the attorney to take to the marshal, and sometimes, if the marshal did not come down immediately, took them up to him.

Upon this testimony, the questions, whether the box in the clerk's office had been duly designated by the marshal as a place where processes to be served by him should be deposited, and whether the summons in this case was either deposited by the clerk in that box, or delivered by him to the marshal, within ten years after May 13, 1862, when the cause of action accrued, were not questions of law for the court, but questions of fact, which should have been submitted to the jury. The court therefore erred in not giving the instruction requested, and in directing the jury to return a verdict for the defendant.

*Judgment reversed, and case remanded, with directions to set aside the verdict and to order a new trial.*