## QUINETTE v. PULLMAN CO. et al.*

### (Circuit Court of Appeals, Eighth Circuit.  January 5, 1916.)

### No. 4235.

1. COURTS ☞366—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION.

Rev. St. § 721 (Comp. St. 1913, § 1538), provides that the laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be rules of decision in trials at common law in the courts of the United States. The Constitution of Oklahoma (article 9, § 43) provides that no corporation shall be permitted to do business without filing a list of its stockholders, etc., and that every foreign corporation, before being licensed to do business, shall designate an agent for the service of process. Comp. Laws Okl. 1909, §§ 5605, 5606, require railroad companies doing business therein to designate a person on whom process may be served and to file a certificate of the designation with the clerk of the district court. *Held*, that the decision of the Supreme Court of Oklahoma that a railroad company, because of its noncompliance with the constitutional and statutory requirements, was not entitled to plead limitations, was conclusive on the federal courts in an action for injuries sustained in Oklahoma.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ☞366.]

2. APPEAL AND ERROR ☞1050—HARMLESS ERROR—EVIDENCE—PECUNIARY CONDITION OF INJURED PERSON.

On the trial of a passenger's action against a carrier for injuries, evidence as to plaintiff's investments, tending to show that he was a man of means, was immaterial and prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☞1050.]

3. APPEAL AND ERROR ☞1060—HARMLESS ERROR—MISCONDUCT OF COUNSEL.

In a passenger's action against a carrier for injuries, the statements of defendant's counsel in examining plaintiff, and in a colloquy concerning the admissibility of evidence, that plaintiff had recovered some thousands of dollars from a casualty company, and had been paid two or three times already for the damages incurred, was misconduct requiring a reversal, where the court did not adequately warn the jury against such misconduct, but merely told them that the result in any other suit was wholly immaterial, and that the question was whether defendant was liable, and the jury would give no consideration whatever to any claimed recovery in any other case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞1060.]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by Jermain P. Quinette against the Pullman Company and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearings denied March 27, 1916, and May 2, 1916.

Charles Mitschrich, of Lawton, Okl., for plaintiff in error.

R. A. Kleinschmidt, of Oklahoma City, Okl. (W. F. Evans, of St. Louis, Mo., and E. H. Foster, of Oklahoma City, Okl., on the brief), for defendant in error St. Louis & S. F. R. Co.

Charles H. Woods, of Oklahoma City, Okl. (J. R. Cottingham, S. T. Bledsoe, and George M. Green, all of Oklahoma City, Okl., and H. T. Wilcoxon, of Chicago, Ill., on the brief), for defendant in error Pullman Co.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SMITH, Circuit Judge. The plaintiff, Jermain P. Quinette, brought this suit on August 18, 1911, in the district court of Comanche county, Okl., against the Pullman Company, to recover for personal injuries sustained October 21, 1910. The case was removed to the United States District Court for the Western District of Oklahoma. There plaintiff filed an amended petition, and to this the Pullman Company filed answer. On January 31, 1913, the plaintiff filed an application to make the St. Louis & San Francisco Railroad Company, hereafter called the Frisco, a party defendant, and, leave having been granted, filed a second amended petition against the Pullman Company, an Illinois corporation, and the Frisco Company, a Missouri corporation, for $50,000 for personal injuries. The Frisco operated through vestibuled trains from St. Louis, Mo., to Lawton, Okl., through Ft. Sill, Okl. The plaintiff lived at the Ft. Sill military reservation. He left St. Louis, Mo., on October 20, 1910, for his home. He traveled on the line of the Frisco, but rode in a car of the Pullman Company. He claims that before they reached the Ft. Sill station he asked the conductor of the railroad train if it would stop at the water tank near the Ft. Sill station, and if he could there get off, as that was nearer his home than the station, and that he was told the train would stop there, and that he could get off there if he desired to do so. He communicated this to the Pullman porter before they reached the water tank, which was about 10 o'clock at night, on the 21st of October, 1910. As they approached the water tank stop the porter took his hand baggage and went to the forward end of the Pullman, and the plaintiff followed him out into the vestibule. As the train stopped the porter said, "Here you are, boss," and he stepped out and fell some 20-odd feet from a bridge to the bed of a stream and sustained serious injuries. The Pullman Company denies, and supports its denial by evidence, many of the latter claimed facts. It is conceded that the general statute of limitations of Oklahoma in such cases is two years, and this suit was brought against the Frisco Company about two years and four months after the accident.

[1] Section 5553 of Snyder's Compiled Laws of Oklahoma of 1909 is as follows:

"Sec. 5553. *Absence—Limitations.*—If, when a cause of action accrues against a person, he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed; and if, after the cause of action accrues, he depart from the state, or ab-

scond, or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

It is provided in the Constitution of Oklahoma (article 9, § 43) that:

"No corporation, foreign or domestic, shall be permitted to do business in this state without first filing in the office of the Corporation Commission a list of its stockholders, officers, and directors, with the residence and post office address of, and the amount of stock held by each. And every foreign corporation shall, before being licensed to do business in this state, designate an agent residing in the state; and service of summons or legal notice may be had on such designated agent and such other agents as now are or may hereafter be provided for by law. Suit may be maintained against a foreign corporation in the county where an agent of such corporation may be found, or in the county of the residence of plaintiff, or in the county where the cause of action may arise."

Section 5605 of the Compiled Laws of Oklahoma of 1909 provides:

"Every railroad company or corporation, and every stage company doing business in Oklahoma, or having agents doing business therein for such corporation or company, is hereby required to designate some person residing in each county, into which its railroad line or stage route may or does run, or in which its business is transacted, on whom all process and notices issued by any court of record or justices of the peace of such county may be served."

Section 5606 of the same statutes provides:

"In every case such railroad company or corporation, and stage company, shall file a certificate of the appointment and designation of such person, in the office of the clerk of the district court of the county in which such person resides; and the service of any process upon the person so designated, in any civil action, shall be deemed and held to be as effectual and complete as if service of such process were made upon the president, or other chief officer of such corporation."

The Frisco Company filed an answer setting up the statute of limitations, but not alleging a compliance with these constitutional and statutory provisions, and the plaintiff demurred and replied to such answer; but the court overruled this demurrer, and on October 10, 1913, the court sustained a motion for judgment for the Frisco Company upon the pleadings. The case was tried to a jury on the issue between the plaintiff and the Pullman Company, and resulted in a verdict for the defendant, upon which judgment was rendered. The plaintiff sued out a writ of error as against both defendants.

The first question in the case normally is as to the statute of limitations. In Hale v. Same Defendant (the Frisco) 39 Okl. 192, 134 Pac. 949, 49 L. R. A. 1915C, 544, Ann. Cas. 1915D, 907, on January 21, 1913, and of course before any of the questions in this case had been submitted or ruled on, the Supreme Court of Oklahoma decided that the Frisco was not entitled to plead the statute of limitations in question. This decision seems to be doubted, because it was prepared by the Judges of the Supreme Court Commission, Division No. 2; but at the close of the opinion is the announcement: "Per Curiam. Adopted in whole." It is evidently as much the opinion of the Supreme Court of Oklahoma as any other. A petition for a rehearing was overruled in that case on September 2, 1913.

It is elementary that the federal courts ordinarily are bound by the decisions of the Supreme Court of a state as to the interpreta-

tion and construction of a state statute. The cases in general upon this question are too numerous to cite, but reference is made to all the authorities cited in the Encyclopedia of the U. S. Reports, vol. 4, page· 1066 et seq., and volume 12, page 424, but reference will be had to some of the cases arising under the statute of limitations:

"Sec. 721. The laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." Revised Statutes of the United States.

In Bauserman v. Blunt, 147 U. S. 647, 652, 13 Sup. Ct. 466, 468 (37 L. Ed. 316), it is said:

"No laws of the several states have been more steadfastly or more often recognized by this court, from the beginning, as rules of decision in the courts of the United States, than statutes of limitations of actions, real and personal, as enacted by the Legislature of a state, and as construed by its highest court. Higginson v. Mein, 4 Cranch, 415, 419, 420 [2 L. Ed. 664]; Shelby v. Guy, 11 Wheat. 361, 367 [6 L. Ed. 495]; Bell v. Morrison, 1 Pet. 351, 360 [7 L. Ed. 174]; Henderson v. Griffin, 5 Pet. 151, 8 L. Ed. 79; Green v. Neal, 6 Pet. 291, 297–300 [8 L. Ed. 402]; McElmoyle v. Cohen, 13 Pet. 312, 327 [10 L. Ed. 177]; Harpending v. Dutch Church, 16 Pet. 455, 493 [10 L. Ed. 1029]; Leffingwell v. Warren, 2 Black, 599 [17 L. Ed. 261]; Sohn v. Waterson, 17 Wall. 596, 600 [21 L. Ed. 737]; Tioga Railroad v. Blossburg & Corning Railroad, 20 Wall. 137 [22 L. Ed. 331]; Kibbe v. Ditto, 93 U. S. 674 [23 L. Ed. 1005]; Davie v. Briggs, 97 U. S. 628, 637 [24 L. Ed. 1086]; Amy v. Dubuque, 98 U. S. 470 [25 L. Ed. 228]; Mills v. Scott, 99 U. S. 25, 28 [25 L. Ed. 294]; Moores v. National Bank, 104 U. S. 625 [26 L. Ed. 870]; Michigan Insurance Bank v. Eldred, 130 U. S. 693, 696 [9 Sup. Ct. 690, 32 L. Ed. 1080]; Penfield v. Chesapeake, etc., Railroad, 134 U. S. 351 [10 Sup. Ct. 566, 33 L. Ed. 940]; Barney v. Oelrichs, 138 U. S. 529 [11 Sup. Ct. 414, 34 L. Ed. 1037]."

In Metcalf v. Watertown, 153 U. S. 671, 673, 14 Sup. Ct. 947, 948 (38 L. Ed. 861), it is said:

"And from the beginning this court has recognized statutes of limitations of actions, real and personal, as enacted by the Legislature of a state, and as construed by its highest court, as rules of decision in the courts of the United States."

In Patton v. Easton, 1 Wheat. 476, 482, 4 L. Ed. 139, and again in Powell v. Harman, 2 Pet. 241, 7 L. Ed. 411, the Supreme Court construed a Tennessee statute of limitations of real actions in accordance with the decisions of the Supreme Court of that state; yet in Green v. Neal, 6 Pet. 291, 8 L. Ed. 402, a judgment of the Circuit Court of the United States which had followed those cases was reversed because of a more recent decision of the state Supreme Court establishing the opposite construction, and in Leffingwell v. Warren, 2 Black, 599, 603, 17 L. Ed. 261, the Supreme Court said:

"The courts of the United States, in the absence of legislation upon the subject by Congress, recognize the statutes of limitations of the several states, and give them the same construction and effect which are given by the local tribunals. They are a rule of decision under the thirty-fourth section of the Judiciary Act of 1789. The construction given to a statute of a state by the highest judicial tribunal of such state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text. * * * If the highest judicial tribunal of a state adopt new views as to the proper construction of such a statute, and reverse its former decisions, this court will follow the latest settled adjudications."

In Balkam v. Woodstock Iron Co., 154 U. S. 177, 189, 14 Sup. Ct. 1010, 1014 (38 L. Ed. 953), after approving these statements, the Supreme Court said:

"These views * * * do not in any way conflict with Burgess v. Seligman, 107 U. S. 20, 32 [2 Sup. Ct. 10, 27 L. Ed. 359], Carroll v. Smith, 111 U. S. 556, 562 [4 Sup. Ct. 539, 28 L. Ed. 517], or Gibson v. Lyon, 115 U. S. 439 [6 Sup. Ct. 129, 29 L. Ed. 440]. None of those cases involved the question of the conclusiveness on this court of the decisions of the courts of a state as to a statute of limitations and the bar created thereby."

And in that case the Supreme Court clearly intimated that if it were passing upon the question there involved it would decide it differently from the decision of the state courts.

In Campbell v. Haverhill, 155 U. S. 610, 614, 15 Sup. Ct. 217, 219 (39 L. Ed. 280), it is said:

"The argument in favor of the applicability of state statutes is based upon Revised Statutes, § 721, providing that 'the laws of the several states, except, etc. * * * shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply.' That this section embraces the statutes of limitations of the several states has been decided by this court in a large number of cases, which are collated in its opinion in Bauserman v. Blunt, 147 U. S. 647 [13 Sup. Ct. 466, 37 L. Ed. 316]. To the same effect are the still later cases of Metcalf v. Watertown, 153 U. S. 671 [14 Sup. Ct. 947, 38 L. Ed. 861], and Balkam v. Woodstock Iron Co., 154 U. S. 177 [14 Sup. Ct. 1010, 38 L. Ed. 953]. Indeed, to no class of state legislation has the above provision been more steadfastly and consistently applied than to statutes prescribing the time within which actions shall be brought within its jurisdiction."

In Seneca Nation v. Christy, 162 U. S. 283, 289, 16 Sup. Ct. 828, 830 (40 L. Ed. 970), it is said:

"The proper construction of this enabling act, and the time within which an action might be brought and maintained thereunder, it was the province of the state courts to determine."

And in Great Western Telegraph Co. v. Purdy, 162 U. S. 329, 339, 16 Sup. Ct. 810, 814 (40 L. Ed. 986), it is said:

"The limitation of actions is governed by the lex fori, and is controlled by the legislation of the state in which the action is brought, as construed by the highest court of that state, even if the legislative act or the judicial construction differs from that prevailing in other jurisdictions."

In Dibble v. Bellingham Bay Land Co., 163 U. S. 63, 73, 16 Sup. Ct. 939, 942 (41 L. Ed. 72), it is said that:

"No rule is more firmly established than that this court will follow the construction given by the Supreme Court of a state to a statute of limitations of a state."

And the rule laid down in Bauserman v. Blunt is cited approvingly in Forsyth v. Hammond, 166 U. S. 506, 519, 17 Sup. Ct. 665, 41 L. Ed. 1095, and in Vance v. Vandercook Co., 170 U. S. 468, 473, 18 Sup. Ct. 645, 42 L. Ed. 1111, and in Hartford Insurance Co. v. Chicago, etc., Railway Co., 175 U. S. 91, 108, 20 Sup. Ct. 33, 44 L. Ed. 84.

No case has been found where the Supreme Court has under any circumstances authorized a departure from this rule as applied to questions arising under the statute of limitations.

The case of Burgess v. Seligman, 107 U. S. 20, 35, 2 Sup. Ct. 10, 27 L. Ed. 359, is cited. It did not involve the statute of limitations. In that case the question was under submission in the federal court before it was decided by the state court and while that case is still adhered to by the Supreme Court it cannot, in view of the other cases that have been cited and the manifest difference between it and this one, be rightly held to be in point.

Clapp v. Otoe County, 104 Fed. 473, 476, 45 C. C. A. 579, is also cited, but does not seem to us to be in point. The same is true of Westinghouse Air Brake Co. v. Kansas City Southern Ry. Co., 137 Fed. 26, 71 C. C. A. 1. In that case the syllabus was by the court and is that:

. "Decisions of the state courts which so construe their statutes as to destroy or impair rights previously acquired through contracts between citizens of different states under statutes and Constitutions which warranted and sustained them when they were vested are not obligatory upon the courts of the United States."

This court has itself gone further than any of the cases cited in City of Ottumwa v. City Water Supply Co., 119 Fed. 315, 56 C. C. A. 219, 59 L. R. A. 604; but such cases do not seem to us to be in point.

It is suggested that if such a law had been passed before the liability of the road ceased, or a decision had been rendered construing the law before the liability of the road ceased, the time of the statute might have been extended; but the Supreme Court of Oklahoma held that there never was a time the Frisco Railroad could plead the statute of limitations in that state, and consequently that if any one supposed the statute of limitations was running he was mistaken, and if any one thought that the cause of action was dead after two years he was mistaken.

Until some case is cited in which it has been held that the federal courts can change the construction of the state courts of a statute of limitations, we must hold that the statute is governed by the decision in this case by the Supreme Court of Oklahoma. It must be borne in mind that there was no common-law statute of limitations, and the defendant is claiming the benefit of a statute of limitations enacted by Oklahoma, and construed by the Supreme Court of that state not to apply to it.

It is said that the United States District Court for the Western District of Oklahoma in another case, Tiller v. Same Defendant, 189 Fed. 994, held the statute of limitations did apply; but it was held in Bauserman v. Blunt, that, even though the federal court below had decided that case before the decision of the Supreme Court of the state modifying the holding as to the state statute of limitations, still the case would be reversed by the Supreme Court to conform to the decision of the Supreme Court of Kansas, from which the case came. This case thus serves to accentuate how far the courts have gone in following the construction of the state courts of statutes of limitations.

[2, 3] Turning now to the writ of error as to the Pullman Company: When the plaintiff was on the stand on cross-examination by the Pullman Company, the following took place:

"Q. That time was nearer than the present time to the time of the accident, and your memory was clearer and fresher at that time than it would be now. This suit here we have been questioning you about, wherein you are plaintiff and the Fidelity & Casualty Company of New York was defendant, and you recovered judgment— (Plaintiff objects; incompetent, immaterial. Defendant proposes to ask the question for the purpose of eliciting the following fact— Plaintiff objects to any statement of any facts not in evidence before the jury.)

"The Court: What is the purpose of the question, without stating what you seek to elicit?

"Mr. Parmenter: To show that growing out of this particular injury he recovered out of this defendant company in that case some thousands of dollars— (Plaintiff objects to a statement of that kind in the presence of the jury, and asks the court to caution the jury not to be influenced by the statement of counsel, because it is irrelevant, incompetent, and immaterial in this case.)

"The Court: I don't see on what theory that would have any bearing on this case in any way at all.

"Mr. Parmenter: He has been paid two or three times for it already. (Plaintiff moves the court to strike out the statement of counsel, and to instruct the jury that the remark of counsel is improper, for the reason it is prejudicial, incompetent, and immaterial in this case, and made for no other purpose than to get something before this jury that is improper evidence.)

"The Court: Gentlemen whatever might have been the result in any other suit, or in the one which has been adverted to here in the examination, is wholly immaterial in this case. The question in this case is whether this defendant company is liable in damages to the plaintiff, and you will give no consideration whatever to any claimed recovery in any other case. Objection sustained. (Defendant excepts to the instruction, and also to the sustaining of the objection.) * * *

"Q. What is your present income at this time? (Plaintiff objects; immaterial, unless shown it is derived from personal services. Sustained. Defendant excepts.)

"Q. What business are you engaged in at this time, if any? A. None. Q. Have you any investments at this time? (Plaintiff objects; immaterial. Overruled. Exception.) A. I own a little bank stock. Q. Is that the only investment you have? A. I am not interested in business of any kind. Q. Is that the only investment you have? A. A little stock in the Lawton Real Estate & Investment Company. (Plaintiff moves to strike out answer; immaterial. Overruled. Plaintiff excepts.)

"Q. What other investments besides those two? (Plaintiff objects; immaterial. Overruled. Exception.) A. Nothing but loans. Q. Money loaned out? A. Yes, sir. Q. Do you have anything to do with the management of the bank where you have stock? A. No, sir. Q. What bank is that? A. First National of Lawton. Q. Any other bank? A. No, sir. Q. This real estate company: where is its place of business? A. Lawton. Q. Have you any connection with its management? A. No, sir. Q. Simply own stock in it as an investment? A. Yes, sir. Q. What other investments besides those two have you? A. Nothing except loans. Q. Where are those loans? Where are they made? (Plaintiff objects; immaterial. Overruled. Exception.) A. Lawton. Q. Who looks after those loans? A. My brother, W. H. Quinette. Q. What part do you take in looking after them? A. None. Q. Now, what other investments have you besides the three you have detailed to the jury? A. None. Q. That's the extent of it? A. That's the extent of it. Q. Since 1910 what, if any, work, services, or labor have you performed? A. Nothing.

"By Mr. Mitschrich: Q. What's the reason you haven't performed any work, services, or labor since 1910? A. I haven't been in physical condition. (Plaintiff moves to strike out all questions and answers with reference to the investments inquired about, for the reason it has developed upon the examination of the witness that no personal services were required of him in connection with them, and under the state of the evidence the testimony is incompetent, immaterial, and we ask the court to strike it out; also to in-

struct the jury that it has no bearing in this case, and cannot be considered by them in arriving at their verdict. Motion overruled. Plaintiff excepts.)"

All of the evidence thus elicited tending to show that the plaintiff was a man of means was immaterial and prejudicial, and the statement of Mr. Parmenter that the plaintiff recovered of the Fidelity & Casualty Company of New York some thousands of dollars, and that he has been paid two or three times for the damages incurred already, were misconduct, and the failure of the court to more adequately warn the jury against the misconduct all require that this case be reversed as to the Pullman Company.

It is therefore ordered that both the judgments rendered against the plaintiff be reversed, and the cause be remanded, with directions to proceed in harmony with this opinion.