ST. LOUIS & S. F. R. CO. et al. v. QUINETTE.

(Circuit Court of Appeals, Eighth Circuit. July 24, 1918.)

No. 4951.

1. COURTS ⟨⟩366(13)—FEDERAL COURTS—FOLLOWING RULE OF STATE DECISION.

Under the rule that federal courts follow the interpretation of state statutes adopted by the state's highest judicial tribunal, where no question of general or commercial law or the violation of the federal Constitution is involved, the federal court was bound to follow a decision of the Supreme Court of Oklahoma erroneously construing the statute of limitations (Rev. Laws Okl. 1910, § 4657, subd. 3, and section 4660).

2. COURTS ⟨⟩356—STATE COURT'S ERRONEOUS CONSTRUCTION OF STATUTE—RULE OF FEDERAL COURT—LAW OF THE CASE.

Where, between a federal court's construction of a state statute controlled by the decision of the state Supreme Court, and the time when the

federal court is again called upon to decide the question, or to enforce its decision therein, the state Supreme Court has reversed its former ruling, or decided at variance with the federal court, the latter court must conform to the latest state decision as an exception to the rule of law of the case.

3. CARRIERS ⊚⟶333(3)—PASSENGERS—PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE.

Where a passenger chose not to alight at a station, but at a water tank, near a bridge, such choice and his knowledge of the location require him to use reasonable care to see that he alighted at the only safe place to alight from the train.

4. CARRIERS ⊚⟶333(4)—PERSONAL INJURY—ALIGHTING FROM TRAIN—CONTRIBUTORY NEGLIGENCE.

A passenger familiar with the conditions at a station, and knowing that he might safely alight from forward end of a smoking car opposite a water tank, who chose to alight from the forward end of a Pullman behind the smoking car, and failed to look where he might have seen the spans of a bridge, and alighted without waiting for the porter to place a step, and before discovering a secure footing, and fell from a bridge, was guilty of contributory negligence.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by Jermain P. Quinette against the St. Louis & San Francisco Railroad Company and the Pullman Company. Judgment for plaintiff, and defendants bring error. Reversed, and cause remanded, with directions to render a judgment upon the pleadings in favor of the St. Louis & San Francisco Railroad Company, and to grant a new trial to the Pullman Company.

Charles H. Woods, of Oklahoma City, Okl. (J. R. Cottingham, S. W. Hayes, and George M. Green, all of Oklahoma City, Okl., and H. T. Wilcoxon, of Chicago, Ill., on the brief), for plaintiff in error Pullman Co.

R. A. Kleinschmidt, of Oklahoma City, Okl. (W. F. Evans, of St. Louis, Mo., on the brief), for plaintiff in error St. Louis & S. F. R. Co.

Charles Mitschrich, of Lawton, Okl., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

SANBORN, Circuit Judge. The St. Louis & San Francisco Railroad Company and the Pullman Company challenge the legality of the trial of an action brought against them by Jermain P. Quinette for negligence whereby he suffered personal injury. Each of the defendants denied that it was guilty of negligence and alleged the contributory negligence of the plaintiff, and the railroad company pleaded in its answer the statute of limitations of the state of Oklahoma, and insisted that the action against it was barred thereby. This case has taken a long and tedious course. The court below first held that the action against the railroad company was barred by subdivision 3, section 5550, and section 5553 of the Compiled Laws of Oklahoma of 1909, which are now subdivision 3, section 4657, and section 4660 of the Revised Laws of Oklahoma of 1910; but in Hale v. St. Louis & S. F. R. Co.,

39 Okl. 192, 134 Pac. 949, L. R. A. 1915C, 544, Ann. Cas. 1915D, 907, the Supreme Court of Oklahoma so construed these sections that they constituted no bar to this action, and in deference to the opinion of that court this court was constrained to reverse the judgment in favor of that company and to order a new trial. Quinette v. Pullman Co., 229 Fed. 333, 143 C. C. A. 453. That trial to a jury has been had. and it has resulted in a joint judgment against the companies for $10,000 and costs. After the second trial and judgment, and on October 30, 1917, in St. Louis & S. F. R. Co. v. Taliaferro, 168 Pac. 788, L. R. A. 1918B, 994, the Supreme Court of Oklahoma overruled its decision in Hale v. Frisco Co., and so interpreted these sections of the statutes that this action was when it was commenced, and is, barred thereby, as the court below had held on the first trial of this case.

The Frisco Company asks a reversal of the judgment against it on the ground that according to the latest and the true interpretation of these statutes the action against it was barred thereby before it was commenced. Counsel for the plaintiff below objects to such a reversal of the cause because: (1) The ruling of the court below on the plaintiff's demurrer to the answer of the defendant pleading the statute of limitations as a defense has not been assigned as error; (2) the question was not raised on the motion for a new trial; (3) rule 11 of this court provides that "errors not assigned according to this rule will be disregarded"; (4) the decision of this court upon the plea of the statute of limitations in 229 Fed. 333, 143 C. C. A. 453, remains the law of this case; and (5) the defendant railroad company has ceased to have any legal existence, and has been dissolved according to the judgment and decree of the federal court, it has no assets, it has given no supersedeas bond, and nothing can be collected on the judgment against it.

[1, 2] But the true construction of the sections stated, which have been the subjects of debate and interpretation, has been the same all the time, and from a time prior to the commencement of this action they have barred it. The error has not been in the statutes, but in the first decision of the Supreme Court of Oklahoma interpreting them, an error which, under the rule that the federal courts follow the interpretation of the statutes of a state which the highest judicial tribunal of that state has adopted, where no question of general or commercial law, or of violation of the Constitution or laws of the United States, is involved, this court followed, as in duty bound; and while the general rule is that the decision of a legal question by a federal court on a review of a trial of a cause becomes the law of that case in a subsequent trial, and in a subsequent review of that trial by this court, there is a just and salutary exception to that rule, under which this case falls. It is that where, between the time of the decision of a federal court of a legal question, like the construction of a state statute which is controlled by the decision of the Supreme Court of the state, and the time when the federal court is called upon again to decide that question, or to enforce its decision in the same case, the Supreme Court of the state has either reversed or changed its former ruling, or made a decision at variance with that of the federal court, it is the duty of the lat-

ter court, that still has jurisdiction of the case, to conform its decision and judgment to the latest decision of the Supreme Court of the state. Messenger v. Anderson, 225 U. S. 436, 443, 444, 32 Sup. Ct. 739, 56 L. Ed. 1152. This rule is just and salutary, because the latest decision is presumptively the right decision, and the federal court should apply that, rather than the erroneous one.

No doubt remains now that the judgment here against the railroad company rests on an erroneous interpretation of the statutes of Oklahoma. The rules of this court permit it to notice and to remedy a plain error, though it is not assigned; and in view of the fact that counsel were doubtless led into their failure to assign error in the overruling of the demurrer to the plea of the statute of limitations by the error of the Supreme Court of Oklahoma, which this court followed, it is undoubtedly our plain duty to take notice of the error on which this judgment is founded and to correct it.

There is no proof that the railroad company has ceased to exist, or has been dissolved by any decree or judgment of any court, nor are the facts that it has no assets, and that no judgment against it can be collected, sound reasons why unlawful judgments against it should be affirmed. The judgment against the railroad company must therefore be reversed.

[3, 4] One of the alleged errors assigned by the Pullman Company is that the court denied its request that it instruct the jury to return a verdict in its favor, on the ground, among others, that the undisputed evidence established the fact that the plaintiff was not free from negligence which directly contributed to his injury. Laying aside the contradictory testimony, and considering those facts only which are admitted by the plaintiff or are established by the uncontroverted testimony, this is the case. The plaintiff was the general manager of Rice & Quinette, who were engaged in the business of buying and selling general merchandise at Ft. Sill, Okl. On October 21, 1910, when the accident to be considered happened, he was about 51 years of age. In earlier life he had been a traveling salesman for about 17 years. He went with Rice & Quinette at the agency in 1898, four years before the Frisco Railroad was built through there across Medicine creek. He had fished in the creek, had traveled on the railroad over the railroad bridge across it, and was familiar with the railroad, the bridge, and the water tank, and with their relative locations to each other. He was living with the commanding officer at Ft. Sill, something less than half a mile from the bridge of the Frisco Railroad Company over Medicine creek, and this bridge was nearly a mile from the railroad station. To avoid traveling the distance from the station to the residence of the commanding officer, he was accustomed to step off the train when the engine stopped to take water at the water tank near the bridge. This water tank was about 100 feet from the south end of the railroad bridge. At the time of the accident, and for some time prior thereto, the railroad company operated a train carrying a Pullman car, which left Oklahoma City about 6 and arrived at Ft. Sill about 10 in the evening. This train usually consisted of an engine, a tender, a baggage car, a combination or smoking car, a day coach, and

a Pullman car, and it was made up in this way on the evening of the accident. When the engine stopped at the water tank to get water, the forward end of the combination car stood on the railroad embankment, and the rear end on the bridge. The plaintiff had frequently stepped off of the forward end of the combination or smoking car of this train while its engine was standing at the water tank taking water, and he knew that when it was in that position the rear end of that car and the cars back of it were upon the bridge. On previous occasions, when he stepped off in this way, he had chosen to get off at that point, because it was nearer to the home of the commanding officer than the station was, and he had walked to the front end of the combination car and stepped off onto the railroad embankment by the side of the car, after previously asking the railroad conductor if the train was to stop at the tank for the engine to take water. On previous occasions, however, he had not been riding in the Pullman car.

The plaintiff testified that on the evening of the accident he rode on this train in the Pullman car from Oklahoma City to Ft. Sill, where he arrived about 10 p. m., that on his way he asked the railroad conductor if he was going to stop at the water tank at Ft. Sill, and the conductor answered, "Yes; do you want to get off there?" and he replied, "Yes, sir;" that he told the porter he wanted to get off at the water tank, but said nothing to the Pullman conductor about it; that when the train was slowing up for its stop at the water tank the porter said to him, "I guess this is where you want to get off, at the water tank at Ft. Sill," took his suit case and grip, and went out the forward end of the Pullman car; that the plaintiff followed him; that the plaintiff did not see him, but he heard him say, "Here you are, boss;" that it is the custom, when a passenger alights from a Pullman car, for the porter to precede him and to place the step or box, take the baggage, and assist the passenger in alighting; that the porter did not do this; that the plaintiff did not wait for him to do it, but got off the car, leaving his baggage on the platform; that the lights in the Pullman car radiated light, so that, if he had looked to the right or left, he might have seen the span of the bridge; that he looked in front of him and down, but did not take the time to look to the right or left; that no one warned him that there was a bridge, or any danger there; that he was anxious, in a hurry to get off; that he looked down, and thought he saw the right of way, when it was the bed of the creek, and thought he was getting off at a safe place—that is why he did not pay attention to it; that he "walked down from the vestibule, and down on the step, and took hold of the rail, and reached down like this, expecting to get my foot upon the right of way, and in reaching down there so far, not knowing that I was near the creek, I lost my balance and fell through," and was injured.

The plaintiff knew the relative location of the bridge, the water tank, and the train when the engine was standing at the water tank; he knew that he had theretofore alighted at the forward end of the smoking car, and that the rear end of that car was on the bridge when the engine stood at the tank, so that, if he had taken time to give attention to it, the fact would have come at once to his mind that the Pullman

car must be on the bridge, and he would have walked to the forward end of the smoking car, as he had previously done, before he alighted. It was he, and not the Pullman porter, or the Pullman Company, that chose that he should alight, not at the station provided for that purpose, but near the water tank, and that choice and his knowledge of the location imposed upon him the duty to use reasonable care to see that he alighted at the only safe place to alight from that train, and that was at the forward end of the smoking car, where he had always alighted before. Because he failed to give this necessary attention, because he failed to look to the right or left, where he might have seen the spans of the bridge, and because he hurried down the steps of the car and let himself down, before the porter stepped off the car, or placed his box, or took off his baggage, and before he discovered whether or not there was secure footing beneath him, this court is unable to avoid the conclusion that the uncontroverted evidence in this case conclusively proves that he failed to exercise that reasonable degree of care which a man of ordinary intelligence and prudence would have used in his situation, and that this failure directly contributed to cause his injury. The court below was therefore in error in its refusal to instruct the jury to return a verdict in favor of the Pullman Company. Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 532, 63 C. C. A. 27, 30; Pyle v. Clark, 79 Fed. 744, 747, 25 C. C. A. 190, 193.

This conclusion renders it unnecessary to consider the other assignments of error. Let the judgment below be reversed, and let the case be remanded to the District Court, with directions to render a judgment upon the pleadings in favor of the Railroad Company and to grant a new trial to the Pullman Company.