VITAL OUELLETTE vs. GRAND TRUNK RAILWAY COMPANY.

Androscoggin.    Opinion November 24, 1909.

*Negligence.   Contributory Negligence.   Reasonable Care.   Burden of Proof.*
*Exceptions.*

Negligence on the part of a railroad company is not to be inferred from the mere stopping of its train on a side or passing track, to permit another train to pass, without informing the passengers that the stop is not at a station platform, when no station had been called, and no attendant circumstances existed calculated to induce a passenger to conclude that the stop was at the usual and proper landing place.

It is not the act of a reasonably prudent man, accustomed to railroad travel to step from a car into black darkness under a supposition that the car is then at the usual place provided for the landing of passengers.   The very darkness itself should be sufficient warning that the station is not there.

Where in an action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant, the verdict was for the plaintiff, *held*   (1)  that the evidence was not sufficient to establish negligence on the part of the defendant; (2)  that the plaintiff failed to prove affirmatively that he was in the exercise of reasonable care; (3)  that the exceptions to the refusal to direct a verdict for the defendant must be sustained.

In an action to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant, it is incumbent upon the plaintiff to affirmatively prove at least two proposi-

tions : 1. That his injuries were caused by the negligence of the defendant. 2. That no failure to exercise reasonable care on his part contributed to bring about his injuries.

Exceptions to the refusal to direct a verdict for the defendant raises the same question as to the sufficiency of the evidence to sustain a verdict for the plaintiff as would be raised by the usual motion for a new trial, except as to the amount of damages.

On exceptions by defendant. Sustained.

Action on the case to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. Plea, the general issue. Verdict for plaintiff for $4800. Defendant excepted to the refusal of the presiding Justice to direct a verdict for the defendant and also to his refusal to give certain requested instructions.

The case is stated in the opinion.

*Newell & Skelton,* for plaintiff.

*C. A. & L. L. Hight,* for defendant.

SITTING : WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

KING, J. Action to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of defendant. Verdict for plaintiff for $4800. The case comes to the Law Court on defendant's exceptions to the refusal of the presiding Justice to direct a verdict for the defendant, and his refusal to give certain requested instructions. The exceptions to the refusal to direct a verdict for defendant raises here the same question as to the sufficiency of the evidence to sustain a verdict for plaintiff as would be raised by the usual motion for a new trial, except as to the amount of damages. To entitle the plaintiff to a verdict it was incumbent upon him to affirmatively prove at least two propositions :

(1) That his injuries were caused by the negligence of the defendant, and (2) that no failure to exercise reasonable care on his part contributed to bring about his injuries.

There is but little conflict in the testimony so far as it relates to those propositions.

On February 6, 1908, the plaintiff was a passenger on defendant's train from Lewiston, Maine, to Berlin, New Hampshire. At

Gorham, an intermediate station, this train crossed another train from Montreal to Portland.   There were at the time at least two parallel tracks at this station extending practically east and west, with the station platform on the north.   The Portland train was on the main track next to the platform heading east.   The plaintiff's train on approaching Gorham took the first passing track next to the main track and stopped at a point overlapping somewhat the easterly end of the other train.   The plaintiff was seated in the forward end of the "smoker" facing the rear of the car.   He testified that he was "kind of half asleep" or "dozing" and just as his train was coming to a stop on the passing track he heard some one call "Berlin Station" when he immediately took his grip and coat, left the car by the forward platform, stepped down and off the steps on the right hand side, supposing, as he put it, "I was getting off on the station' platform," and was instantly struck by something and rendered unconscious.   No one saw the accident.   After the Portland train passed on east, and the plaintiff's train had backed over the switch on to the main track and pulled up to the platform, the plaintiff was found unconscious and severely injured lying in a hole in the snow at the switch two or three hundred yards east from the platform in front of the station.

The plaintiff did not see any person who called "Berlin Station" and could not say it was a train man, nor was there any other evidence that such a call was made, and there was no reason for such a call to be made, as Berlin Station had not been reached. But whether the plaintiff heard such call in fact, or in dream, he undertook to alight from the train while it was on the passing track and in so doing was injured and carried to the place where found by one or the other train.

The distance between the outside rail of the main track and the inside rail of the passing track was 7 feet 10 inches, and the space between cars standing abreast on those tracks about 4 feet.   It is not made certain by the evidence if the forward end of the smoker had passed by the engine of the Portland train.   The plaintiff gave no testimony as to this.   In his declaration, however, he alleged that it had not, and "that the plaintiff, alighting as aforesaid,   .   .   .

started across said tracks to said station platform and was then and there struck by said "Portland train" leaving said station, hurled a great distance through the air, thrown violently upon the ground, and left unconscious with a broken leg," etc.

Mr. Leader, a passenger for Gorham on the Berlin train, passed through the smoker to a rear car just before the train stopped and saw the plaintiff "apparently dozing in the seat as I went by, and I kind of slapped him like that (indicating), and said good-bye." Plaintiff knew Mr. Leader was to stop at Gorham. Leader alighted from the rear platform of the rear car and crossed the main track in front of the engine of the Portland train. The headlight of that engine was burning. He was not certain if there was more than one car in the rear of the smoker, but the rear end of the Berlin train was "surely a car length if not better" east of the pilot of the engine of the Portland train. It had been storming during the day and was snowing some when the train reached Gorham at 5:26 P. M.

The plaintiff thus described in testimony what he did in getting off the train : "A. I took hold of my grip and coat and started out. Q. Describe where you went and how you went? A. I can't very well describe. All I can say I just had time to put hardly my face out when I was struck. Q. You went out on the platform? A. Yes, I went out on the platform. Q. Then what did you do? A. I was struck by the car. Q. When you were on the platform, or did you step down? A. No, I stepped down. . . . . Q. And was it dark or light? A. Dark."

On cross-examination plaintiff was asked "Q. Did you get your feet on the ground? A. Yes sir. Q. Did you take a step forward? A. No sir, I didn't have a chance to take it. I didn't know there was anything there. Q. Do you know whether you did take a step forward or not? A. I know I didn't."

There was no evidence that Gorham station had been called or announced in any way before or at the time the train stopped on the passing track.

The gist of the plaintiff's alleged cause of action is that the defendant did not inform him that the train had not stopped at

the station platform, and did not warn him of the dangers inci-
dent to alighting from the train where it then was.

If it was not reasonably to be expected in the actual course of
events that the plaintiff might attempt to alight from the train
when it stopped on the passing track, then there was no duty
imposed upon the defendant to warn him not to alight.    Was his
act of alighting there reasonably to be expected under the facts and
circumstances as disclosed?   We think not.   The train had not
reached his destination, Berlin, and nothing had been done by
defendant to cause him to think so ; neither had the train reached
the place provided for passengers to alight at the intermediate sta-
tion, Gorham, and no call or announcement of that station had
been made, and nothing appears to have been done by defendant
which might cause the plaintiff to think the stop was at the station,
other than the actual stopping of the train ; nor was the stop at a
place where, so far as it appears, passengers were even known by
defendant to leave the train, or ever did leave the train, as was the
fact in *Boss* v. *Providence & W. R. R. Co.*, 15 R. I. 149.

The only ground, then, upon which it can be contended that the
plaintiff's act in leaving the train as he did was reasonably to be
expected is the fact that the train did stop without notice to him
that it was not at a station platform.

There are many cases which hold that where, after a station had
been called, and the train either stopped short or over ran, and a
passenger in the exercise of due care was injured in alighting in a
dangerous place, the company may be found negligent, and for the
reason that the calling the station as the next stop, and then
stopping the train without giving warning that the station is not
reached, are acts of the company from which in the light of
attendant circumstances negligence may be found.

But no authority has been called to our attention, and we have
found none, in support of the proposition that negligence on the
part of a railroad company may be inferred from the mere stopping
of its train on a side or passing track without informing the
passengers that the stop is not at a station platform, when no station
had been called or announced, and no attendant circumstances

existed calculated to induce a passenger to conclude that the stop was at the usual and proper landing place.

Moreover, it is important to be noted in this case that the fact that the plaintiff had fallen asleep was undoubtedly the real cause of his misfortune.    Disturbed in his dreamy slumber he erroneously concluded that the train had reached his destination, Berlin Station. He was familiar with the route, and knew that his friend Leader, who bade him "Good-bye" as the train was stopping, was to leave the train at Gorham.    It is manifest that if he had not been sleeping he would not have concluded that this stop was at Berlin, instead of on the passing track at Gorham, but would have known and appreciated where the train was.    It was not the duty of the defendant to keep him awake.    Though a passenger, he was, nevertheless, free to indulge in sleep if he desired, but if that indulgence was the cause of the damage for which this action is brought, and we think it was, he must bear it and not the defendant.

Again, the plaintiff failed to prove affirmatively that he exercised reasonable care in leaving the train.    Such care required him to look where he was alighting, and to observe the situation so far as it could be observed, and to control his actions accordingly.    If it be true, as alleged in his writ, that his car was stopped at a point east of the engine of the Portland train, and that he was struck by that train in crossing the main track, then he alighted in the face of the headlight of that engine, which must have revealed to him, if he looked, the situation, and that his train was not at the station. If without looking, and heedless of the obvious danger, he undertook to cross in front of the engine, his act was not only negligent but reckless.

If on the other hand, as his testimony indicates, he stepped from the car into utter darkness, then certainly he must be charged with a lack of reasonable care, for the darkness was apparent, and observed by him.    He said:    "I couldn't see anything before me."

It is not the act of a reasonably prudent man accustomed to railroad travel to step from a car into black darkness under a supposition that the car is then at the usual place provided for the

landing of passengers.    The very darkness itself should be sufficient warning that the station is not there.

It is, therefore, the opinion of the court that the evidence was not sufficient to sustain a verdict for the plaintiff, and that the defendant's exceptions to the refusal to direct a verdict in its favor must be sustained.

The other exceptions are not considered.    The entry will be,

> *Exceptions to refusal to direct a verdict*
>     *for defendant sustained.*
> *New trial granted.*