## CHICAGO, M. & ST. P. RY. CO. v. YOUNGERS.

(Circuit Court of Appeals, Eighth Circuit. April 13, 1925.)

No. 6580.

**1. Negligence ⊗═65 — "Contributory negligence" defined.**

"Contributory negligence" is a want of ordinary care on the part of a person injured by the actionable negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Negligence.]

**2. Carriers ⊗═333(1) — Duty of passenger leaving train to exercise ordinary care.**

It is the duty of a passenger in leaving a train to exercise ordinary care for his own safety.

**3. Carriers ⊗═333(3)—Passenger injured in alighting from train without invitation from trainman held chargeable with contributory negligence.**

Plaintiff, a passenger in a day coach at night, was asleep when the train stopped at his station, but awoke after the train started, and a brakeman offered to stop it and did so, opening the vestibule doors while it was still moving, then going inside to signal. Plaintiff went to the lower step, and when the train stopped was holding to the handrail and reaching for the ground with his foot, when, as he testified the train started, throwing him off, and he fell through a trestle and was injured. He was not seen by the brakeman after signaling. Plaintiff lived in the town, and knew the location of the trestle. *Held,* that there was no invitation to him to alight at that place; that it was his duty to wait until the trainmen could ascertain its safety, and that in failing to do so and in hastening to alight he was chargeable with contributory negligence.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action at law by Theodore L. Youngers against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, with instructions.

Ed. L. Grantham, of Aberdeen, S. D. (H. O. Hepperle, of Aberdeen, S. D., and T. M. Bailey, of Sioux Falls, S. D., on the brief), for plaintiff in error.

A. B. Fairbank, of Sioux Falls, S. D. (Boyce, Warren & Fairbank, of Sioux Falls, S. D., and Dan Hanson, of Parker, S. D., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

PHILLIPS, District Judge. Theodore L. Youngers, hereinafter called plaintiff, brought this action against the Chicago, Milwaukee & St. Paul Railway Company, a corporation, hereinafter called Railway Company, to recover damages for personal injuries. From a verdict and judgment for plaintiff, the Railway Company sued out a writ of error to this court.

Plaintiff purchased a ticket from the Railway Company's agent at Sheldon, Iowa, for passage from Sheldon to Parker, S. D. On December 8, 1921, he boarded the passenger train of the Railway Company at Sheldon. He occupied a seat on the left-hand side of the day coach. During the course of his journey, he fell asleep, and was asleep when the train reached Parker. The station of Parker was called, the train stopped, and ample opportunity was afforded plaintiff to get off at Parker; but on account of being asleep he failed to do so. As the train was leaving Parker, plaintiff awakened and saw the brakeman coming into the front end of the day coach. The brakeman called Marion, the next station. Plaintiff got up, walked to the front end of the coach, and told the brakeman that he should have gotten off at Parker. The brakeman stated he would stop the train and permit plaintiff to get off.

The plaintiff testified:

"I was asleep when the train got to Parker. I heard some noise, or something wakened me, and the brakeman came into the front end of the coach and called the next station, Marion. I got up and walked over to where he was and told him I was supposed to get off at Parker. He said he would stop the train and let me off. I was in the aisle of the day coach, down toward the front door. * * * He went up to the front end of the day coach and pulled the bell cord. Then he stepped to the right into the vestibule and opened some door there, pulled up the door and pulled the door over and opened the doors. The train slowed up after he pulled the bell cord. * * * When the train stopped I stepped down onto the steps and tried to get off, stepped on the bottom step and took hold of the handrail with my right hand and had my right foot on the step. I was groping down with my left foot, trying to make a landing. The train jerked and broke my grip and threw me off; I mean it broke the grip of my hand on the rail. It was quite dark. There was only the light that shone in there from the day coach. * * * The reason I knew the train stopped was, everything was quiet, I couldn't hear or feel any

motion of any kind, and the brakeman was gone and nobody around. I thought it was time for me to get off and let them start the train. When I fell I struck the corner of the beam of the bridge and fell 15 or 16 feet from that beam. There was some moonlight that night, on the south side. The north side of the train was dark, and I could not see where I was at all until after the accident. * * * I held onto the handrail with my right hand. That was the rail to the west. I had my grip in my left hand, and my overcoat on. * * * All I know of the jerk was that it threw me off, it broke my grip on the handrail. When I hit the bottom I was in a sitting position. * * * The trestle is about 200 feet long. * * * After I told the brakeman I wanted to get off the train, I saw him pull the bell cord. I then saw him open the trapdoor. * * * He stepped back somewhere. I don't know where he went. I couldn't say whether he went into the smoker or not. I didn't see him. I paid no attention to where he went. The train was coming to a stop, and I did not take note of where he went. At the time that he lifted the trapdoor the train was slowing up. * * * He stepped back and was gone. I saw no more of him. The last thing he said was that he would stop the train. He said nothing further and I said nothing further. * * *

"I started out and went down the platform onto the steps, to the right, and held on with my right hand. I continued to hold the side rail with my right hand, the bag in my left hand. I was groping for the ground with my left foot, to find the ground, when something jerked me off, broke my grip. I was groping down to reach the ground, so as to land on the ground. I was reaching down with my foot to find the ground. * * * I was thrown backwards. It threw me kind of with the train, in the direction the train was moving."

The plaintiff had lived at Parker for nine years prior to the accident, and was familiar with the physical surroundings in the vicinity where the accident occurred. He entertained some doubt that he could leave the train in safety at the place it stopped. On these points he testified as follows:

"The river flows from the south and flows away north. It was about five blocks from the depot to the river. The town runs up to the river, right up to the river bank. I have been living in Parker nine years. I knew the river was there. I know about that part of the town. * * * I knew there were some bad places along the track. I didn't

know just how far it was to the ground. It had thawed some and I wanted to be sure, if I couldn't reach the ground, I could get back on the step."

The brakeman testified:

"I boarded the train in the head end of the ladies' coach. It had pulled up about a car length. The train was then in motion. I went up the steps and stepped inside the coach before working the vestibule. I was carrying a lantern. I set my lantern inside the coach. I did not at that time close the vestibule door, or trap. I saw a man from the middle of the car on the south side come running up the aisle. He wanted to know where we were at. I told him the next station was Marion Junction. He said he wanted to get off at Parker. He came to the vestibule and wanted to get off while the train was going. I said, 'No, I will stop the train.' He said they were not going too fast to get off. I said, 'No; wait until I stop the train.' I stepped into the ladies' car and pulled the signal cord. I stepped back into the vestibule, stayed there a few seconds, and didn't think the train was stopping. I pulled the cord again. * * * I stepped inside the smoker and pulled the signal cord. After that the train stopped. I stayed there a second, and saw it was stopping, setting the brakes, and I stepped back into the vestibule. I did not see Youngers. * * * I did not know he had gone down the steps at that time. I didn't see him going down there. When I went into the smoking car, he was on the opposite vestibule, the south side. * * * I heard somebody say 'Oh!' right after the train stopped. I was in the vestibule, down the second last step. It was right after the train stopped. It was a gradual, ordinary stop. There was no further movement of the train before I left it."

As a result of the fall plaintiff suffered injuries for which he seeks recovery in this action, on the ground that the same were caused by the negligence of the Railway Company: (1) In that the agents of the Railway Company stopped the train and invited him to alight at an unsafe and improper place; and (2) in that they moved the train while he was in the act of so alighting.

At the close of the evidence, counsel for the Railway Company moved the court to direct a verdict in favor of the Railway Company, on the ground, among others, that the evidence showed as a matter of law that plaintiff was guilty of contributory negligence. This motion was overruled.

The Railway Company stopped its train at Parker after having called the station. It afforded plaintiff ample opportunity to leave the train in safety at that point. The failure of plaintiff to leave the train was solely due to his own fault. Plaintiff advised the brakeman of his failure to get off at Parker, after the train was in motion leaving Parker. The brakeman offered to stop the train and proceeded to signal the engineer by pulling the signal cord. This signal called upon the engineer to immediately stop the train, but did not apprise the engineer of the reason therefor. According to plaintiff's testimony, the brakeman opened the vestibule door and raised that portion of the platform over the steps while the train was yet in motion. The brakeman, then believing the train was not stopping, went into the smoking car to again signal the engineer. The brakeman did not again see plaintiff until after the accident had occurred.

Counsel for the Railway Company argue with much force that the circumstances and physical facts show plaintiff undertook to leave the train while it was yet in motion. This plaintiff in his testimony denied. Certain it is, however, that plaintiff went onto the steps immediately upon the train coming to a stop, if not before. It was not a usual stopping place, but a special stop for plaintiff's accommodation. There was no express invitation to plaintiff to alight at the place where the train stopped. He relies upon an implied invitation by the opening of the car door and the raising of the platform. Opening the door and raising the platform before the train stopped could not possibly have been an invitation to alight at the point where the train actually stopped. When those acts were done by the brakeman, the train was yet in motion and neither he nor plaintiff knew just where the train would stop. Plaintiff started to leave the train and suffered the accident, before the trainmen had any opportunity to ascertain if the place was safe. The undisputed facts show there was no invitation express or implied to plaintiff to leave the train at the place where the accident occurred.

Plaintiff's right to recover, if at all, must therefore be based on the alleged movement of the train while he was in the act of alighting. The jerk or movement of the train after it had come to a stop is denied by the testimony of the brakeman, conductor, engineer, fireman, baggageman, J. G. Anderson, a passenger on the pullman, and A. F. Meyer, a passenger on the day coach. Dorothy Proctor, a witness for the plaintiff, testified: "I don't remember anything unusual that happened in the making of the stop;

don't remember any movement it made after it stopped." Mrs. E. L. Boone, a passenger, testified in behalf of the plaintiff that there was a jerk of the train. She had previously made a voluntary statement to the contrary, which was introduced in evidence by the Railway Company.

[1] One of the errors assigned is that the lower court erred in overruling the motion of the Railway Company for a directed verdict in its favor, on the ground that the proof showed as a matter of law that plaintiff was guilty of contributory negligence.

"Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." Murray et al. v. Southern Pacific Co. (C. C. A. 9) 236 F. 704, at 706, 150 C. C. A. 36, 38; De Honey v. Harding (C. C. A. 8) 300 F. 696, at 699.

[2] It was the duty of the plaintiff, in leaving the train, to exercise ordinary care for his own safety. St. Louis & S. F. R. Co. et al. v. Quinette (C. C. A. 8) 215 F. 773; Ouellette v. Grand Trunk Ry. Co., 106 Me. 153, 76 A. 280, 138 Am. St. Rep. 340; Farrell v. Great Northern Ry. Co., 100 Minn. 361, 111 N. W. 388, 9 L. R. A. (N. S.) 1113; Kellogg v. Smith et al., 179 Mass. 595, 61 N. E. 138.

In Farrell v. Railway Co., supra, the court said:

"It is elementary, and in this state well settled, that the duties of carriers and passengers are reciprocal. If carriers are held to the highest degree of care for the safety of passengers, passengers ought to be held to the exercise of ordinary care to protect themselves."

[3] If plaintiff failed to exercise that reasonable degree of care which a man of ordinary intelligence and prudence would have used in his situation, and this failure directly contributed to cause his injury, he was guilty of contributory negligence.

After the train stopped, in the absence of an invitation to there alight, plaintiff should have given the trainmen an opportunity to ascertain the conditions of the place and move the train if need be. Instead of so doing, he hurriedly left the train. With his face to the inside of the vestibule, his right hand on the handrail, his grip in his left hand, he backed down the steps and was groping in the dark with his foot to determine whether there was a footing or landing,

when, as he testified, the train jerked and caused him to fall. Can it be said that a man of ordinary prudence would in that manner step from a train into utter darkness, when he fully knew it was at a point other than its usual stopping place, in the vicinity of a long bridge, where there were bad places along the track, and when he had such a doubt in his own mind, that he was groping with his foot to see if there was a safe landing place? We think not. We believe the plaintiff's own testimony shows that in his anxiety to leave the train, without giving the agents of the Railway Company an opportunity to ascertain if the place was safe, he hurried out, willing to take the chance, and, without due regard for his own safety voluntarily placed himself in a position of danger. We cannot escape the conclusion that the uncontroverted evidence conclusively proves that he failed to exercise that reasonable degree of care which a man of ordinary intelligence and prudence would have used in his situation, and that this failure directly contributed to cause his injury. We believe the minds of all reasonable men in the exercise of an impartial judgment could reach no other conclusion. Such being the fact, the trial court should have directed a verdict for the Railway Company, and its failure so to do was error. Gilbert v. Burlington, C. R. & N. Ry. Co. et al. (C. C. A. 8) 128 F. 529, 63 C. C. A. 27; Chicago, M. & St. P. Ry. Co. v. Bennett (C. C. A. 8) 181 F. 799, 801, 104 C. C. A. 309; Chicago, R. I. & P. Ry. Co. v. Baldwin (C. C. A. 8) 164 F. 826, 829, 90 C. C. A. 630.

The cause is therefore reversed, with instructions to grant the Railway Company a new trial; and it is so ordered.