KATHERINE DAHL, Respondent, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Appellant.

(223 N. W. 37.)

Opinion filed January 7, 1929.

*McGee & Goss* and *John E. Palmer,* for appellant.

*Sinkler & Brekke,* for respondent.

BURKE, Ch. J. This is an action for personal injury. The plaintiff claims that on the 12th day of December, 1925, she purchased a ticket at Minot, N. D., to Burlington, N. D.; that the depot platform at Burlington was several inches below the lower step of defendant's passenger coach on which plaintiff was riding; that it was the duty of defendant to furnish, for the use of passengers, in order to make alighting from said passenger train secure and safe, a stool or step in addition to the regular step attached to the said passenger coach and that it was unsafe to alight from said coach to said platform without the use of such stool or step; that no stool or step was furnished and that plaintiff was compelled to jump therefrom; that she fell with great violence to the platform and sustained injuries by reason of the defendant's negligence in not furnishing such stool or step. The defendant denies any negligence and alleges that if the plaintiff sustained any injury at such time such injury was directly and solely caused by plaintiff's own negligence and want of care.

The cause was tried to a jury and a verdict for $1,000 was rendered upon which judgment was duly entered. At the close of the testimony the defendant moved the court to direct a verdict or for dismissal of the action on the ground and for the reason that there was an entire failure of proof of any negligence on the part of the defendant and that the proof affirmatively shows that if the plaintiff suffered any injury the same was due to her want of care and her own contributory negligence. The motion was denied. After the verdict, the defendant moved for a judgment notwithstanding the verdict or for a new trial upon the same grounds, which was overruled, and the defendant appeals from the said judgment and from the order overruling the motion for judgment notwithstanding the verdict or for a new trial.

There are just two questions involved in the case, viz.: First, Was there any negligence on the part of the defendant, and Second, Does it affirmatively appear from the plaintiff's testimony that her own negligence was the cause of her injury? The plaintiff testified that she boarded the train at Minot in the afternoon of the 12th day of December, 1925 for Burlington; about seven or eight miles from Minot; that no one got off at the town of Burlington except herself. She further testifies in substance as follows: I lived at Burlington and went to Minot frequently; I never got off a train before without

a stool. When the train stopped at Burlington I, as usual, got up to go out, they stop so you got to move fast to get off; when I was getting down to get my foot off the car I fell. I felt I was going down further than usual and I realized there was no step and I went forward in between the platform and rails. There was a brakeman standing there at the time; he did not do anything when I was falling; I had my hand already on the ground; he grabbed this arm and he pulled me up that way to keep from striking my face on the platform. At the time I commenced to alight from the train he did not offer any assistance.

Q. How far below, beneath the lower step of the train is the platform?

A. . . . I measured from the lower step down to the coach where the ties are and that was ten or twelve inches. . . . I measured by my knee and it came up to about here, standing up.

Q. The step came up to where I am holding my finger upon your leg from the step down to the platform, isn't that true?

A. Yes, that is the way it was. I had no tape line or measure with me, but I stood and measured this way. . . . I think I am about 5 feet and 5 inches, and weigh 187 pounds; . . . I certainly did fall. I should say I was hurt. I was so stunned for a few minutes I did not know what happened to me.

Q. Prior to this time of the accident, Mrs. Dahl, what was the condition of your health?

A. It was fine at that time.

Q. Were you strong and able-bodied?

A. I should say I was.

On cross-examination:

Q. Anything wrong with your eyesight?

A. Why, I cannot recognize people way over in the seats there.

Q. Anything wrong with your eyesight?

A. I am a little nearsighted.

Q. You can see the floor in front of you?

A. Yes, sir, certainly.

Q. You can see an ordinary stool, like they use?

A. Certainly could.

Q. Did you look?

A. Yes, sir, I looked.

Q. Why didn't you tell your counsel so when you first told us about this?

A. Why, what do you mean?

Q. You told your counsel here in describing this accident that you felt yourself falling.

A. I put my foot down and did not strike the stool.

Q. Did you see the stool?

A. There was no stool there.

Q. You looked down and saw what you were doing and put your foot down?

A. Yes.

Q. And then felt yourself falling?

A. I felt myself going down where the stool should have been and there was no stool.

Q. Did you look?

A. Certainly I looked down and there was no stool.

The Court: And did they assist you in getting off on other occasions?

Mr. Goss: Same objection, as to what they did. She has admitted she looked and did not see any stool and stepped down.

The court: Overruled.

Q. Did they assist you on other occasions?

A. Yes I have had them take hold of my arm.

Q. You did not wait for them to assist you?

A. I say I stepped out.

Q. You did not wait for them to assist you?

A. I came down, I had to come.

Q. You did not wait for the brakeman to assist you or make any attempt to assist you?

A. I was not making him assist me.

Q. You did not wait for the brakeman to assist you or make any attempt to assist you?

A. I came down out of the car.

Q. Is that all the way you can answer it?

A. Yes, I came down out of the car.

Mrs. Dahl is later recalled for further direct examination. She testified as follows:

Q. Mrs. Dahl, when you were getting off the train there when was it that you first knew that there was no stool there?

A. When my foot coming down did not strike it, I did not feel those places and I was going further down than I usually do. when I want to reach that step.

On cross-examination:

Q. So you did not look to see if the step was there before you stepped?

A. I looked after I was down, I could not see anything.

Q. That is not the question—read the question.

The question was repeated, and the witness answered:

A. No, I did not look before I stepped.

This is all the evidence there is on the part of the plaintiff to establish negligence on the part of the defendant. There is no evidence that there was anything wrong with the platform and while the plaintiff testified that when she stood on the step she looked down and saw no stool; that she did not call for assistance; that she was a strong able-bodied woman at the time; that she could see; that she looked down and saw no stool there; that she stepped between the platform and the car and fell. Later she is put back on the stand and testified that she did not look to see if there was a stool there until after she was down. This she makes quite emphatic when the question is repeated to her and says: "No, I did not look before I stepped."

The only claim of negligence in the complaint is that the depot platform kept and maintained by the defendant for passengers to alight on from the passenger trains (at Burlington) was several inches below the lower step of the defendant's passenger coach, and the defendant failed to furnish a stool to assist the passengers in alighting and that it was a dangerous place to alight, without a stool.

It will be noted that the plaintiff, in her complaint, measures the distance between the lower step and the platform in inches. According to her testimony it was 10 or 12 inches from the lower step down to the ties, which agrees with the allegation in the complaint that the platform was several inches below the lowest step.

According to the testimony of A. W. Vogal, the lower step to the rail is 18 inches and from the rail to the top of the platform 8 inches. This also is an estimation but it is all that this court has to go by. If the station agent is right, it would be only 10 inches from the lower step of the car to the platform and 8 inches from the top of the platform down to the rail, and considerably less than that by the testimony of the plaintiff who testified that it was 10 or 12 inches from the lowest step down to the ties. Both statements are in accord with the allegations of the complaint.

In the case of Finlayson v. Bryan, 56 N. D. 407, 217 N. W. 662, this court quotes with approval from the case of Ormond v. Wisconsin Power & Light Co. 194 Wis. 305, 216 N. W. 489, on the duty of the common carrier as follows:

"It (the carrier) is liable to them only for ordinary negligence, which means simply a want of ordinary care, as that term is measured with reference to the duty of common carriers. . . . The care exacted of the common carrier is a high degree of care. To constitute ordinary care, it must be the 'highest degree of care reasonably to be expected from human vigilance and foresight.' " Also from 6 Cyc. 611, in which it is said:

"Nor, in general, is there any duty to assist a passenger in entering or alighting from the train or other conveyance, unless there is some unusual danger or difficulty arising from the place or means afforded for alighting, or the passenger is, to the knowledge of the servants of the carrier, infirm or under some disability."

In the case of Finlayson v. Bryan, supra, the plaintiff's action was for personal injury in tripping over a robe in alighting from a taxicab and the court held that it was not negligence to have a robe in a taxicab nor in failing to assist the plaintiff in alighting, her infirmities being unknown to the taxicab driver.

"A carrier is not liable to a woman passenger who falls on the car steps while alighting, because another passenger steps on her dress, the conductor being at the time on the platform, assisting a child to alight." Furgason v. Citizens' Street R. Co. (1896) 16 Ind. App. 171, 44 N. E. 936. Note in 32 A.L.R. 1324.

"A carrier is not liable for an injury received by a passenger in

alighting, by stepping between the platform and train at a subway station of an elevated road, although the crowd in back were pushing." Field v. Boston Elev. R. Co. 188 Mass. 222, note, 74 N. E. 334.

In Gabriel v. Long Island R. Co. 54 App. Div. 41, 66 N. Y. Supp. 301, 8 Am. Neg. Rep. 506: "While he was in the act of alighting, . . . the plaintiff's right foot suddenly descended into an aperture between defendant's platform at said station and the carriage of defendant, it appeared that the lowest step was about fourteen inches higher than the station platform level, and distant horizontally from that platform about 6 inches." The granting of a motion for a directed verdict was affirmed on appeal.

The case of Young v. Missouri P. R. Co. 93 Mo. App. 267, is a case very much in point. In that case it was claimed that the railroad company was negligent in failing to place a portable step on the platform at the station so that she could easily and safely alight from the steps of the car in which she was riding, onto the station platform, and that, in attempting to alight from the steps of said car onto the said platform, which former was 24 inches above the latter, but that owing to the neglect of the defendant to have a portable step as aforesaid, she struck the said platform and was injured. The court said:

"We know of no law, nor has our attention been called to any, which required the defendant to furnish portable steps for the use of its passengers in entering or leaving any of its cars. If it did furnish such steps, it was but a self-imposed duty for the violation of which there could, of course, be no liability. . . .

"It seems that according to her (the plaintiff's) testimony she supposed there was a portable step there and so took the step without looking to see, though she could have seen, had she looked, whether or not it was there. She probably miscalculated the distance from the step to the platform but it was testified by one of the expert witnesses that such an accident under like circumstances would have probably occurred even if a portable step had been placed there and she had stepped upon that instead of upon the platform; but however this may have been it is quite obvious that had she herself exercised ordinary care and relieved herself of the weight of her child and looked before 'she leaped,' the result might have been different. It is equally obvious that the neglect of these precautions on her part were contributions to

the negligence of the defendant, if it can be said to have been negligent, which was the direct and proximate cause of the injury."

Another case in point is the case of the Texas Midland R. Co. v. Frey, 25 Tex. Civ. App. 386, 61 S. W. 442. In this case the plaintiff claimed the railroad company was negligent in not providing a platform upon which plaintiff could alight and she was compelled to alight upon the ground; that there was no box or stool to aid her in reaching the ground. There was a gravel and cement platform for the accommodation of passengers on and off all trains, built on a level with the tracks and the platform was not more than 18 inches from the lower step of the passenger coach. The court said:

"Under the facts in this case, there could have been but one possible ground upon which the jury could have based the verdict, and that was the failure to have a box or stool upon which Mrs. Frey could step in getting off the cars. That there was a platform was uncontroverted, and there was no attempt to prove that it was defective, or that it was not at the usual and ordinary distance from the steps of the cars. . . . There is not one single fact that tends to establish negligence upon the part of the railway company, unless it should be presumed from the fact that Mrs. Frey was injured in stepping off the car. Can negligence be thus presumed from the mere happening of the event, none of the attending circumstances tending to establish negligence? We think not. San Antonio A. P. R. Co. v. Robinson, 73 Tex. 277, 11 S. W. 327; Broadway v. San Antonio Gas Co. 24 Tex. Civ. App. 603, 60 S. W. 270."

In the case of San Antonio & A. P. Co. v. Wiuvar (Tex. Civ. App.) 257 S. W. 667, the nature of the evidence shows that the defendant's "platform was about 18 feet wide, was made of concrete, and practically level, and but 14 inches, not over 20 inches, below the lowest step of the car; that the appellee herself was familiar with that train and that platform provided for passengers to alight, as she had traveled over it before. The distance to the platform from the last step was the usual and customary distance in such cases, and the same as used on Ford passenger cars." The court said:

"When appellee stepped from the last car step, following other passengers leaving the car, she placed her foot upon the platform where her foot slipped, and she fell and injured herself. No box was put

down for her or any other passenger. The porter stood there ready to assist her or any passenger. The conductor was close by. . . . The question arises at the very outset, Was there enough testimony on the question of negligence to submit to the jury?

"Certain cases may arise, as said by this court in International & G. N. R. Co. v. Williams (Tex. Civ. App.) 183 S. W. 1185, when it may become the duty of the carrier to assist its sick, weak, old, or disabled passengers from the train, but not so for strong healthy females or other persons well enough to care for themselves." This woman was fifty years old and weighed 196 pounds. "Under the facts proven, we do not believe in this case that any duty was imposed on the appellant to assist appellee to alight from the train."

In Lafflin v. Buffalo & S. W. R. Co. 106 N. Y. 136, 60 Am. Rep. 433, 12 N. E. 599 (1), 5 Am. Neg. Cas. 268, the plaintiff, a passenger, in attempting to step from the car to the station platform, missed the latter, fell between it and the car, and was injured. The distance between the platform and the car was 11 inches. The lower step of the car was 8 inches below the top of the platform, and 1 foot 7 inches distant therefrom. The second step was about 4 inches below the platform, and 2 feet 2 inches therefrom. The court held that the facts did not justify a verdict for the plaintiff, and that a refusal to direct a verdict for the defendant was error.

In Race v. Union Ferry Co. 138 N. Y. 644, 34 N. E. 280, 15 Am. Neg. Cas. 360, a passenger was injured while stepping from the ferry bridge onto the boat, the deck of which was 18 or 20 inches lower than the bridge. The court held that a carrier of passengers in the management of its business has the right to assume that passengers will take care of themselves, and that, if it conducts its business with such care as will make the entrances upon its boats safe for persons of ordinary prudence, it meets the requirements of the law. Loftus v. Union Ferry Co. 84 N. Y. 455, 38 Am. Rep. 533, 5 Am. Neg. Cas. 234, recognized the rule requiring the strictest diligence of carriers of passengers in providing suitable and safe accommodation for the landing of passengers but held that the rule does not impose the duty of so providing for the safety of passengers that they shall encounter no possible danger, and meet with no casualty, in the use of the appliances provided by it.

Held, that there was no evidence showing negligence on the part of the carrier.

In the case of Seymour v. Chicago, B. & Q. R. Co. (C. C.) 3 Biss. 43, Fed. Cas. No. 12,685, 7 Am. Neg. Cas. 544, held: "Railway companies will not be liable, although negligent, if the injury arose from the want of ordinary or proper care on the part of the person injured. Where plaintiff in stepping from a train to the station platform slipped on ice on the platform and was injured, the defendant would not be liable if the plaintiff could by reasonable care, have avoided stepping on the ice." This happened at night and there were other questions in this case, of want of light on the steps and platform which made the question of contributory negligence a question for the jury.

In Kurfess v. Harris, 195 Pa. 385, 46 Atl. 2, 7 Am. Neg. Rep. 575, "where a lady, sixty years of age, in alighting from a train, instead of stepping on the third step before reaching the platform, attempted to reach the platform from the second step, and in doing so fell and was injured, and it appeared that the tracks were depressed 20 inches lower than the station platform, it was held that the unusual act of alighting and not the depression of the tracks, was the cause of injury and nonsuit was proper."

In the case of San Antonio & A. P. R. Co. v. Wiuvar, supra, the court said:

"It is not the duty of a carrier to assist strong, healthy persons, well able to care for themselves, to alight from a train, especially in the day time, by the usual number of steps of the proper standard onto a well-paved, even concrete platform, the usual distance from the last step."

"It is elementary and in this state well settled, that the duties of carriers and passengers are reciprocal. If the carriers are held to the highest degree of care for the safety of passengers, passengers ought to be held to the exercise of ordinary care to protect themselves." St. Louis & S. F. R. Co. v. Quinette, 164 C. C. A. 7, 251 Fed. 773; Ouellette v. Grand Trunk R. Co. 106 Me. 153, 138 Am. St. Rep. 340, 76 Atl. 280; Farrell v. Great Northern R. Co. (Farrell v. Chicago, G. W. R. Co.) 100 Minn. 361, 9 L.R.A.(N.S.) 1113, 111 N. W. 388; Kellogg v. Smith, 179 Mass. 595, 61 N. E. 138.

In the recent case of Evans v. Orttenburger, 242 Mich. 57, 217 N.

W. 753, the court said: "The law requires that normal persons of mature years, possessed of their faculties, should exercise them for their own protection. This the plaintiff failed to do, but relied on the assumption that 'in a business place things are supposed to be safe.'" In Larned v. Vanderlinde, 165 Mich. 464, 131 N. W. 165, the following language is applicable: "One is negligent if he allows such a flight of stairs to escape his notice, from no other reason than mere inattention to his surroundings."

It is well settled that even where a carrier is negligent, if the injury arose from the want of ordinary or proper care on the part of the person injured, the carrier is not liable. According to the testimony of the plaintiff she was, at the time of the accident, a strong able-bodied woman in good health. She had got on and off the train at Burlington many times, but on this occasion, in broad daylight, when she was the only person to get off the car at that place, she hurried up, she did not wait for the conductor or the brakeman to help her—she did not use the handhold on either side of the steps—she did not look to see where she was stepping, and without using any of her senses, she stepped off between the platform and the car. Reasonable minds cannot differ, or come to any conclusion except that the plaintiff's negligence was the proximate cause of her injury and she cannot recover. Murphy v. Iowa Electric Co. — Iowa, —, 220 N. W. 360; Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976; Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. 55 N. D. 687, 215 N. W. 158; Haugo v. Great Northern R. Co. 27 N. D. 268, 145 N. W. 1053; Ferm v. Great Northern R. Co. 53 N. D. 543, 207 N. W. 39.

The trial court should have granted the motion for judgment notwithstanding the verdict. The judgment of the lower court is reversed and it is ordered that judgment for the defendant be entered on the motion of defendant for judgment notwithstanding the verdict.

BURR, NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.