169 P.2d 551

### ELLIS et al. v. SOUTHERN PAC. CO.

### No. 4899.

Supreme Court of New Mexico.

June 3, 1946.

H. Vearle Payne, of Lordsburg, for appellant.

E. Forrest Sanders, of Lordsburg, for appellees.

LUJAN, Justice.

The judgment to be reviewed is one awarding damages to the plaintiff below, who is appellee here, on account of personal injuries suffered in a fall in alighting as a passenger from one of defendant's trains while making a scheduled stop at the railway station of Duncan, Arizona.

The only ground of negligence set up in the complaint is the failure on defendant's part to provide a footstool for use by passengers in alighting, thus leaving an unsafe distance between the last step on the coach and the surface of the station platform to be negotiated by passengers in alighting from the train. The defendant fell in attempting to step from the coach to the platform and suffered personal injuries on account of which the jury awarded her damages in the sum of $1500. The defendant prosecutes this appeal from such judgment presenting two fundamental grounds for reversal (1) that no negligence on defendant's part was established; and (2) that, granting there was such negligence, the plaintiff's contributory negligence bars recovery. Both contentions were urged in support of a motion for directed verdict which the trial court denied. Thus we have the matter squarely presented whether the court erred in the view it took of the evidence either as to negligence or contributory negligence.

It must be accepted as a fact established by the verdict that the plaintiff fell, as claimed, and suffered the injuries to which she testified. There is no claim that the verdict is excessive. We have then but to consider whether the court below, under the evidence adduced, should have declared as a matter of law that there was no negligence; or, if or granting that there was, on undisputed facts, the plaintiff was guilty of contributory negligence barring recovery. Now, for the controlling facts.

The plaintiff, whose husband joined her as a co-plaintiff in the complaint filed, boarded the defendant's train at Lordsburg, New Mexico, about 8:30 o'clock in the forenoon of July 31, 1944, having purchased a ticket for Duncan, a station just over the state line in Arizona. The train arrived there at 10 o'clock on the forenoon of the same day. It was a bright, sunny day and all of the passengers on the coach occupied by plaintiff alighted before she did and, apparently, without difficulty. In alighting she carried her overnight bag in her right hand, her purse and knitting bag under her left arm and was holding to the handrail to her left with her left hand. The conductor was standing a short distance away opposite the exit from the coach and to one side with his back turned toward the plaintiff but she did not call upon him for assistance in alighting. On the contrary, upon reaching the bottom step of the car, she paused momentarily, looked down, mentally gauging the distance to the platform but misjudging same, and then stepped straight forward, rather than letting herself down while retaining a hold on the handrail and fell on her hands and knees, dropping her luggage as she fell.

The plaintiff's eyesight is good and at the time of her injury she was 44 years of age, in good health and with no apparent

physical infirmity. When she boarded the train at Lordsburg she observed that the lower step on the coach was "pretty high," although admitting that she got off on a different side from that on which she boarded the same. Photographs of the coach identified as the one on which the plaintiff traveled from Lordsburg to Duncan on the day in question showed it to have four steps between the floor of the coach and the surface of the station platform. The plaintiff herself was quite confused as to the number of steps on the coach, first stating it had three steps and later that there were two only, finally admitting that she took no note of the number of steps as she descended from the coach. Exact measurements made by witnesses for the defendant fixed the distance from top of the bottom step to top of the rail as 15½ inches and the ball of the rail was from 1 to 1½ inches above the surface of the platform, thus establishing the distance from the surface of the bottom step to the surface of the platform as 17 inches at the most, according to this positive and rather convincing testimony introduced by the defendant.

▮ The plaintiff points out certain testimony introduced by her as tending, although doubtfully, to establish the distance as slightly more than as shown by actual measurements taken by the defendant. As indicated, the sufficiency of plaintiff's evidence to overcome that of the defendant showing the distance in issue to be 17 inches is questionable but assuming it to be so, or that if not that, nevertheless, it was negligence on defendant's part to fail to provide a footstool to enable passengers to negotiate safely a distance of 17 inches on alighting, an assumption vigorously challenged by defendant's counsel, there still could be no recovery if the plaintiff's negligence contributed proximately to cause the injuries of which she complains. And her own testimony does establish convincingly that it did so contribute. The trial court erred in failing so to instruct the jury.

▮ The rule applicable generally on the carrier's duty to furnish a footstool or portable box is stated in 13 C.J.S. Carriers, § 728, page 1365, as follows:

"In the absence of circumstances rendering such assistance necessary, a carrier is not required to furnish a boarding or an alighting passenger with a portable box or footstool; but where the car step is unreasonably high, the carrier should furnish a box or footstool to facilitate the boarding or alighting of a passenger, and should exercise due care to see that such box or stool is in a safe condition, and is placed or used by its employees in a safe manner. The carrier is not, however, an insurer of a passenger against injuries sustained by

him in using a step box or footstool to board a train."

See also on the question, Roberts v. Kurn, 231 Ala. 384, 165 So. 77; Texas Midland R. Co. v. Frey, 25 Tex.Civ.App. 386, 61 S.W.442; Hagerstown & F. R. Co. v. Wingert, 133 Md. 455, 105 A. 537 and Annotation in 20 A.L.R. 914.

But assuming, without deciding, that defendant was negligent, a doubtful assumption, we are compelled to resolve in its favor the contention that plaintiff also was negligent in a respect that helped bring about the injuries on account of which she has recovered judgment.

The testimony which convicts her of negligence has been detailed above. Carrying her overnight bag in her right hand and with the muscles of her left arm flexed to retain underneath it her purse and knitting bag while holding to the handrail with her left hand, and noting the absence of a footstool, but misjudging the distance to the platform, she deliberately stepped straight forward from the coach, encumbered with all this baggage, fell and was injured. The conductor was within easy call, with his back toward her, as she admitted, but she made no request for assistance. She was in good health with nothing in her physical condition to suggest the need for assistance. Her eyesight was good and it was broad daylight. Upon boarding the train at Lordsburg, from an opposite side to be sure, she had noted the exceptional height of the lower step from the station platform.

Under the circumstances, due care for her own safety suggested either that she request assistance of the conductor who stood nearby, or that she deposit some of her baggage on a step or in the vestibule of the coach until she had alighted. That she was not unmindful of the risk appears from her own admission that she paused at the bottom step before attempting to negotiate the distance unassisted. If she had resolved the apparent risk in favor of her own safety rather than showing a willingness to take the chance involved, she would not have suffered injury. The plaintiff was contributorily negligent and there can be no recovery. Boyce v. Brewington, 49 N.M. 107, 158 P.2d 124; Dominguez v. Southwestern Greyhound Lines, 49 N. M. 13, 155 P.2d 138; Dahl v. Minneapolis, St. P. & S. S. M. R. Co., 57 N.D. 538, 223 N.W. 37; Trudnowski v. New York Central R. Co., 220 App.Div. 503, 221 N.Y.S. 686; Yazoo & M. V. R. Co. v. Skaggs, 181 Miss. 150, 179 So. 274; Lattimer v. Texas & P. R. Co., Tex.Civ.App., 106 S.W.2d 727. In Trudnowski v. New York Central R. Co., supra, the court said [220 App. Div. 503, 221 N.Y.S. 690]:

"Not only is there failure of proof of any negligence on the part of defendant, but, from her own version of the transac-

tion, it would seem that plaintiff's injuries were due to her own lack of precaution. She had traveled upon railroad trains from time to time, and must be presumed to have known something of the dangers incident to such travel, and of the necessity of using reasonable care to protect herself. She says that, with one small child in her arms and holding another by the hand, she walked off the car without attempting to see whether, as she stepped therefrom, she would be in a place of safety or otherwise. That she relied upon the presence of a stepping box may explain, but is no excuse for, so glaring a lack of ordinary care. Nearly all the passengers had left the car before her; it does not appear that the train was about to start; she was in no wise hurried, and had full opportunity to 'watch her step' for possible danger. Whether her failure to do this arose through haste, through inattention, or unwarranted assumption of safety is of no importance; it is sufficient to say that by the exercise of ordinary caution she could have avoided the accident, and defendant is not required to compensate her for the consequence of her own neglect. Creenan v. International R. Co., 139 App.Div. 863, [124 N.Y.S. 360]; Smith v. Brooklyn Heights R. Co., 129 App.Div. 635, 114 N.Y.S. 62; Race v. Union Ferry Co. of New York, 138 N.Y. 644, 34 N.E. 280."

The language of the court just quoted is peculiarly applicable to the facts of the case before us. Apparently, the only distinction to be drawn in the important facts is that in the quoted case the injured plaintiff did not look at all but acted instead upon the unwarranted assumption that a footstool was there, while here she did look, noted the absence of one, paused momentarily in an apparent state of indecision as to whether to alight without calling for assistance, resolved in favor of doing so and was injured in carrying out her resolution. Her only explanation for the fall suffered is that she misjudged the distance. Even so, the defendant should not be penalized for this and other negligent acts and omissions of plaintiff which contributed proximately to the injuries suffered.

In an effort to save her judgment the plaintiff has thrown a dragnet into the record, seeking to find some ground of negligence litigated, even if not pleaded, as a basis for recovery. The grounds thus relied on must fail for lack of evidence either on the issue of negligence itself or upon that of causal connection. Although there was some testimony from a witness for plaintiff to controvert defendant's proof, both documentary in the form of photographs and verbally in testimony of witnesses, that surface of the platform was smooth and even, the plaintiff does not so much as suggest in her testimony that the fall was due to stepping on an uneven surface. Indeed, the only fair in-

ference from her testimony is that she started falling before either foot touched the surface of the platform. She does not claim that she stepped in one of the so called "pot holes," the presence of which was testified to by a witness for plaintiff.

Nor is there the slightest evidence that there was anything wrong with the handrail used by plaintiff in descending from the coach or that the steps were defective in any respect. Her own testimony as to her age, good health and physical condition rebuts the implication that her appearance suggested the need of assistance. Cf. Southern R. Co. v. Laxson, 217 Ala. 1, 114 So. 290, 55 A.L.R. 389. The claim of actionable negligence in other respects than that pleaded must be denied.

Other questions are presented and argued but the view we take of the issue of contributory negligence renders their consideration unnecessary. It follows from what has been said that the judgment of the trial court should be reversed and the cause remanded to the district court with a direction to set aside its judgment and enter one for the defendant. It will have its costs here and below.

It is so ordered.

SADLER, C. J., and BICKLEY, J., concur.

HUDSPETH, J., did not participate.

BRICE, Justice (dissenting).

I am of the opinion that the testimony does not justify the majority's conclusion that the appellee was guilty of contributory negligence, as a matter of law. The only testimony regarding the manner of her alighting from the car was that of the appellee herself, and it is as follows:

"Q. How were you holding your baggage? A. Well, I had my overnight bag in my right hand, and my purse and other bag (knitting bag) under my left arm and I was holding to the rail with my left hand. * * *

"Q. Did you notice whether or not there was any footstool or anything else between the ground and the last step for you to step on? A. There wasn't any footstool, no. * * *

"Q. Then what happened? Did you try to step to the ground? A. Well, I just stepped and I fell to my hands and knees.

"Q. Do you know what caused you to fall there? A. Well, I don't know, I just didn't judge my distance. * * *

"Q. Were you watching where you were stepping? A. Yes, I certainly was. * * *

"Q. I understand, when you fell, you lost hold of everything? A. I held on until I fell. When I fell, of course, it was so high, naturally, when I fell, I dropped all my bags.

"Q. You dropped all of your bags when you fell? A. Yes, sir. * * *

"Q. When you got to that last step, did you pause or did you just step right off? A. I kind of paused and looked down.

"Q. You paused and looked over the distance to the ground, did you? A. I thought I saw the distance. * * *

"Q. Did you turn loose of this handrail or grab-iron over here when you fell? A. Yes, sir, when I fell, I did."

The testimony amounts to this: The appellee, with an overnight bag in her right hand and her purse and knitting bag under her left arm, went down the car steps holding to the handrail with her left hand. Still holding to the rail, she stepped forward toward the ground and fell to her hands and knees. It is obvious that she held on to the rail until her body in falling pulled her away from it. There is nothing to indicate that holding the knitting bag and purse under her arm was the cause of her fall. She seemed to be extraordinarily careful. She paused and looked down and thought the distance was a little long, but believed she could negotiate it. The majority conclude that the distance was 17 inches or less.

The fact is she left the car exactly as the ordinary passenger leaves it. She held to the handrail and stepped down facing from the car, without turning her back or turning sideways. Passengers do not ordinarily turn sideways or step down backwards when descending from a car. If there had been a footstool on which to alight, she necessarily would have stepped "straight forward." Her negligence it seems, from the majority opinion, was in her act of stepping "straight forward" and in not letting "herself down while retaining a hold on the handrail." Her testimony shows that she held to the hand rail until she fell.

If she did "deliberately step straight forward from the coach," but was exercising the care that passengers ordinarily use under similar circumstances, she was not guilty of negligence; and whether she did or not was for the jury to say. This court should not say as a matter of law that appellee was guilty of contributory negligence.

The conclusion of the majority renders it useless for me to consider the question of appellant's negligence.